AMINIE A. BROOKS *vs.* LLEWELLYN MORRILL.

Somerset.     Opinion November 29, 1898.

*Deed—boundaries.     Way.     Tree.     Sidewalk.*

In an action to recover damages for an injury received by the falling of a limb from a tree overhanging the sidewalk, it appeared that the defendant's land, opposite the tree, was bounded " on the west line " of a highway which was built nearly four rods outside of the recorded location.

*Held ;* That the true boundary line of the defendant's land was the exterior limit of the road that was wrought and in actual use for travel, and not the " west line " of an invisible and unwrought location.

ON EXCEPTIONS BY DEFENDANT.

This was an action on the case to recover from the defendant damages which the plaintiff claims to have sustained by the falling of a limb from an elm tree, claimed by the plaintiff to be standing on the defendant's land and overhanging a sidewalk forming a part of the highway, upon which the plaintiff was walking at the time of the accident, said road or highway extending from Hartland village to Palmyra.

One of the grounds of the defense was that the tree did not stand on his land, but stood in the limits of the highway, some little distance east of the west line of said road, which said road line, the defendant claimed, formed the eastern limit of the defendant's lot.

Other facts are stated in the opinion.

*Wm. B. Brown*, for plaintiff.

This action can be maintained if the tree, from which the plaintiff sustained the injury, is on the land of the defendant.     It is a duty incumbent upon land-owners abutting a highway, to keep their premises safe ·to the public exercising its right of passage along said highway.

They should keep their trees fringing such highway well trimmed of rotten and defective branches, and a person injured while passing along the street, under such defective tree, in the

exercise of due care, after proof of heedless negligence on the part of the defendant, has an undoubted remedy in damages against its owner.    *Weller* v. *McCormick,* 52 N. J. L. 470, S. C. 18 Vroom, 397.

The defendant admitted that said defective tree was planted by his father, John J. Morrill, his predecessor in title, which tree, standing within 14 feet of defendant's front door, he has maintained for shade and ornament ever since. It is his tree, for the negligent misuse of which he is liable.

The record of a town way properly laid out and accepted by the town establishes its limits, and is the legal boundary of lands lying adjacent thereto.    Fences and buildings facing a highway can be deemed its true boundaries only in the absence of proper records and monuments.

This case discloses both monuments and a record location, which unerringly establish the side-lines of Elm street in Hartland village.    R. S., c. 18, § 95; *Whittier* v. *McIntire,* 59 Maine, 143; *Stetson* v. *Bangor,* 73 Maine, 359; *Wood* v. *Inhbts. of Quincy,* 11 Cush. 489; *Horne* v. *Haverhill,* 110 Mass. 527; *Plumer* v. *Brown,* 8 Met. 578; *Pettingill* v. *Porter,* 3 Allen, 349.

A fence placed more or less near a highway is only " prima facie evidence of the boundary of the highway, it being a question for the jury whether it was a fence fronting upon " the highway, within the meaning of the statute.    See *Sprague* v. *Waite,* 17 Pick. 309.

*S. S. and F. E. Brown,* for defendant.

SITTING:    PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, STROUT, JJ.

WHITEHOUSE, J.    This is an action on the case to recover damages for a personal injury sustained by the plaintiff by reason of the falling of a limb from an elm tree overhanging the sidewalk upon which she was walking in the village of Hartland.

The principal ground of defense was that the elm tree in question opposite the defendant's house was not on the defendant's

land, but stood within the limits of the highway, and that he owed no duty with respect to it towards travelers on the highway.

The earliest conveyance of the defendant's lot introduced in evidence is that of Edward Warren to Levi Morrill, dated November 24, 1849. In that deed the boundaries are thus described: "Beginning on the west side of the road leading from the village of Hartland to Palmyra, at a stake thirteen rods and sixteen and one-half links from the north-east corner of the Avon house, now occupied by Horace M. Stewart, measuring on the west side of said road; thence southerly on the west line of said road eight rods; thence south seventy-five degrees west at right angles to said road, twenty rods; thence northerly on a line parallel to said road, eight rods; thence to the place of beginning, being the same parcel of land now occupied by John J. Morrill."

It is undoubtedly the well settled rule of construction in this state that if the land described in a deed is bounded on a highway, or its boundary line runs to a highway, and thence by the highway, the grantee is presumed to take a fee to the centre of the highway subject to the public easement, if the grantor owns to the centre; but this presumption may be rebutted and controlled when the terms of the description and the circumstances of the conveyance clearly indicate a contrary intention. *Low* v. *Tibbetts*, 72 Maine, 92; *Oxton* v. *Groves*, 68 Maine, 372. And ordinarily if a boundary runs to or by the *line* of an object, the exterior limit of the object is intended. "So in common language, if one speaks of the line or lines of a street, the exterior limits would be understood and intended." *Hamlin* v. *Pairpoint Manfg. Co.*, 141 Mass. 51; *Smith* v. *Slocomb*, 9 Gray, 36.

It has been seen that in the description above given in the deed of Edward Warren to Levi Morrill, the easterly line of the lot is "on the west line of said road." Indeed there is no evidence in the case that Edward Warren owned beyond the "west line of said road;" and it is not in controversy that the lot conveyed to Levi Morrill by this deed was bounded and limited on the east by the exterior west line of the road.

In 1855 Levi Morrill conveyed the lot to John J. Morrill,

describing it in the same language employed in the deed above described from Edward Warren; and in 1874 John J. Morrill conveyed the lot to Llewellyn Morrill, the defendant, by a deed which embraced also the Avon lot mentioned in the first named deed. The description of the eastern boundary of the lot, in this deed, is not identical with that in the preceding deeds. But this fact becomes immaterial when it is considered that Levi Morrill could convey no more than he owned; and as the lot described in his deed to John J. was bounded by the west line of the road, so the lot conveyed by John J. to the defendant must be limited by the same boundary and stop at the line of the road as an abuttal.

It was not in controversy that, at the date of the deed first mentioned from Edward Warren to Levi Morrill, there was a "road leading from the village of Hartland to Palmyra" past the defendant's lot, as described in that deed, and that it had then been built, and traveled as a public highway, for about seven years, and continued to be so used and maintained as a public way, within the same limits, down to the time of the accident, a period of fifty-five years. And the defendant introduced evidence, and offered other evidence, tending clearly to show that the westerly line of this road, as thus constructed and maintained, was west of the elm tree in question, and hence that the tree was within the limits of the highway and not on the defendant's land. But it appeared that for a distance of seventy-five or eighty rods, including that portion of it opposite the defendant's lot, this road had been built outside of and nearly four rods west of the original location recorded in the town records in 1842; and it was not in controversy that if the defendant's lot were bounded by the west line of the original location as recorded, the elm tree would undoubtedly be upon the defendant's land. It appears from the evidence that nearly one-half of the width of this location, within the limits of the eighty rods mentioned, is at one point under a meeting-house, and at another point under a dwelling-house; and that no attempt has ever been made to build the road as located, and that it has never been opened or used for public travel.

The defendant contended that the west line of the existing road

as wrought and traveled, and not the west line of the recorded location, must be deemed the line mentioned in the deeds, and the true boundary line of the defendant's lot. For the purposes of the trial the presiding justice ruled otherwise and instructed the jury that "the west line of the road means the west side of the road as laid out and recorded." Thereupon the jury returned a verdict for the plaintiff, and the case comes to this court on exceptions to this ruling.

It is the opinion of the court that this ruling cannot be sustained. The question is not free from difficulty, but it must be regarded as res judicata in this state. The precise question arose in *Sproul* v. *Foye*, 55 Maine, 162, and in the opinion by Mr. Justice WALTON, the court said: "Some forty or fifty rods of this road was built outside of the original location of the county commissioners, and the question is whether the line of location or the road as actually built is to be regarded as the true boundary of the land conveyed. The deed bounds the land by the new county road leading from Wiscasset to Dresden. At this time the road had been open and used for public travel about three years. Did the parties refer to the road as located or to the road as built? To a mere line of location not wrought, not in use for public travel, or to the road that was wrought and in actual use as a public highway? A road is a way actually used in passing from one place to another. A mere survey or location of a route for a road is not a road. A mere location for a road falls short of a road as much as a house lot falls short of a house. Can the proposition be maintained that an invisible and unwrought location answers such a call better than a visible wrought road over which the public is passing daily? We think not." See also *Tibbetts* v. *Estes*, 52 Maine, 566.

*Exceptions sustained.*