LUDLOW MANUFACTURING COMPANY *vs.* INDIAN ORCHARD COMPANY.

Hampden.   October 1, 1900. — October 18, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Maintenance of Dam — Deed — Prescription.*

A deed from a manufacturing company to a canal company granted " the right to flow the lands and privileges of the said manufacturing company on said river to the extent which a dam across the river would flow the same, erected twenty-eight feet high above the general surface of the bed of the river at the point where the excavations are made for said dam on the estates of said canal company below the granted premises." The excavations were at the end of the dam, and had been begun before the date of the deed; and afterwards a dam twenty-eight feet high was built at that point upon a natural dam of sandstone, which had a height of eighteen inches above the general surface of the river bed east and west of it. Before the dam was built eighteen inches of broken surface rock were removed, so that the base of the dam was in the same plane with the general surface of the river bed two hundred feet to the east and west, and also in the same plane with the excavations above mentioned. *Held,* that the canal company had no right under the deed to maintain flashboards upon the dam which raised the water eighteen inches higher than it would be raised by the dam.

The owner of a dam may acquire by prescription a right to maintain flashboards which raise the water much higher than it would be raised by the dam; and the fact that they have been maintained for twenty years, unexplained, raises a presumption that a prescriptive right has been gained.

BILL IN EQUITY, to restrain the defendant from raising the water of the Chicopee River higher than it would be raised by the defendant's permanent dam. Hearing before *Knowlton, J.,* who entered a decree dismissing the bill; and both parties appealed to the full court. The facts appear in the opinion.

*J. B. Carroll & W. S. Robinson,* for the plaintiff.

*C. L. Long,* for the defendant.

HOLMES, C. J. This is a bill to restrain the defendant from raising the water of the Chicopee River higher than it would be

raised by the defendant's permanent dam. The defendant maintains flashboards upon the dam which raise the water eighteen inches higher, and claims the right to do so under its deeds, by prescription and by appropriation under the mill acts. The case was sent to a master, who made a remarkably clear and satisfactory report, and upon that report the bill was dismissed, on the ground that the defendant had acquired the right in question by prescription.

We agree with the master and the single justice that the defendant has not the disputed right under its deeds. The deed relied upon is a deed from the Springfield Manufacturing Company, the plaintiff's predecessor in title, to the Indian Orchard Canal Company, the defendant's predecessor in title, dated September 16, 1845. It contained these words : " Also the right to flow the lands and privileges of the said manufacturing company on said river to the extent which a dam across the river would flow the same, erected twenty-eight feet high above the general surface of the bed of the river at the point where the excavations are made for said dam on the estates of said canal company below the granted premises." The excavations referred to were excavations at the end of the dam, and had been begun before the date of the deed, and afterwards a dam twenty-eight feet high was built at that point. The dam is built upon a natural dam of sandstone, which had a height of eighteen inches above the general surface of the river bed east and west of it. But before the dam was built eighteen inches of broken surface rock, etc., were removed, so that the base of the dam was in the same plane with the general surface of the river bed two hundred feet to the east and west. It also was in the same plane with the surface of the excavation made before September 16, 1845, and referred to in the deed. The defendant contends that its predecessor was entitled to build eighteen inches higher than it did, that is to say, twenty-eight feet above the natural surface of the sandstone dam. But the natural surface of the sandstone dam cannot be called the "general" surface of the river bed, even if the words "at the point where the excavations are made" were taken to qualify "surface" or "bed of the river." "General" refers to a surface more extended than a narrow ridge. However, we regard

" at the point where the excavations are made " as qualifying " erected." The defendant's predecessor probably adopted our construction, as it built a dam exactly adopting the measurement which we deem correct, and as it used no flashboards before 1861. We think the meaning plain ; but if it were doubtful, these facts might be considered. *Stone* v. *Clark*, 1 Met. 378.

But from 1861 to August 31, 1886, flashboards of the vertical height of eighteen inches were maintained. This was sufficient to give a right by prescription. *Williams* v. *Nelson*, 23 Pick. 141. *Cowell* v. *Thayer*, 5 Met. 253. *Ray* v. *Fletcher*, 12 Cush. 200. Gould, Waters, § 337. It is true that there was no express evidence of knowledge on the part of the plaintiff except in 1878. But the use was open and visible, not hidden, as in the case of an underground drain dealt with in *Carbrey* v. *Willis*, 7 Allen, 364, 368, and *Hannefin* v. *Blake*, 102 Mass. 297. The flow upon the plaintiff's land was increased, and it or its predecessor had a cause of action or a claim under the mill acts until the period of limitation had run. It is not material that setting back the water interfered with no use which the plaintiff wished to make of the stream and did no actual damage. *Bolivar Manuf. Co.* v. *Neponset Manuf. Co.* 16 Pick. 241, 247. *White* v. *Chapin*, 12 Allen, 516, 518. If notice in such a case is necessary, and if it is not sufficiently proved by the proof of knowledge on one occasion in 1878, it may be presumed. *Perrin* v. *Garfield*, 37 Vt. 304, 311. See *Dalton* v. *Angus*, 6 App. Cas. 740, 801. We may say more broadly that the fact that flashboards have been maintained for twenty years, unexplained, raises a presumption that a prescriptive right has been gained. *White* v. *Chapin*, 12 Allen, 516, 519.

This case is not affected by *Pierce* v. *Travers*, 97 Mass. 306, cited for the plaintiff. There the flashboards were put up only for short periods when the water would not hurt the grass, during the part of the year in controversy. Here they were maintained all the time, except when carried away by floating ice, and then they were replaced. See *French* v. *Braintree Manuf. Co.* 23 Pick. 216, 219, 220. The principle is stated in *Ray* v. *Fletcher*, 12 Cush. 200, 208. The master finds that the easement acquired has not been abandoned. It is not argued that

his finding was not justified, although after the burning of a mill in 1886 and during embarrassments of the company then owning the defendant's premises the flashboards were not kept up for several years.    *Williams* v. *Nelson*, 23 Pick. 141, 147.

Even if the deed had limited the rights of the defendant under the mill acts, which it did not purport to do, (*Brady* v. *Blackinton*, 113 Mass. 238, 242,) it would have had no effect upon the power to gain a title subsequently by prescription. *Stearns* v. *Hendersass*, 9 Cush. 497.

Whether when the elements of a prescriptive right are established there may be held to exist also a prior appropriation under the mill acts, it is unnecessary to decide.    It might be said that an adverse use under a denial of the other party's right, if it failed to justify itself on that ground, could not fall back upon the mill acts, and it might be urged that the true explanation of the well settled doctrine that a mill owner can acquire a right to flow land by prescription is to be found in the presumption that he has acted adversely and not under the mill acts.    But the implications of *Williams* v. *Nelson*, 23 Pick. 141, are opposed to our suggestion, and tend toward the view that a prior appropriation under the mill acts may ripen into a prescriptive title if no compensation is paid for twenty years.    If the latter view be correct, there was a prior appropriation of the water under the mill acts by the defendant as a further justification for its conduct.    This was not lost by the temporary removal of the flashboards.    See *French* v. *Braintree Manuf. Co.* 23 Pick. 216, 222.

It also is found that the defendant's use of the water does not interfere with the plaintiff's mills and wheels as they now are constructed.

*Bill dismissed.*