HOLMES B. ROUNDS *vs.* EDWARD B. HAM.

HATTIE M. GARRITSON *vs.* EDWARD B. HAM.

ALMON D. TOLLES *vs.* EDWARD B. HAM.

CHARLES O. NASON *vs.* EDWARD B. HAM.

ELMER E. BLOOD *vs.* EDWARD B. HAM.

York.   Opinion November 22, 1913.

*Boundaries.   Calls.   Deeds.   Intention.   Line.   Location.   Lots.   Road.*
*Wrought and Traveled.*

1.   When the line of a road is referred to in a deed as a boundary, and the road actually traveled lies wholly or in part outside of the limits of the way as laid out, it is a question of intention whether the reference be to the road as laid out, or as traveled and used; and it is to be determined as a question of fact.   In these cases the court find that such a reference was to the road as traveled.

2.   When the calls of a deed are applied to the face of the earth, and it is doubtful which of two objects or places is meant by the language of the deed, parol evidence showing intention may be resorted to.

3.   Where a call in a deed began "seven rods and twenty-two links north-westerly from" a certain road, the court finds in these cases that the distance is to be measured from the site of an old wall, which had marked the physical boundary of the road as it was traveled.

On report.   Judgment in each case for the plaintiff.

These are real actions to recover certain parcels of land situate at and fronting on Long Sands Beach, in the town of York, in the County of York.   The only question in issue is, where upon the face of the earth is the rear line of the plaintiffs' lots, and this depends substantially upon the location of the road mentioned in the deeds of the plaintiffs.   The plaintiffs contend that the road referred to in their deeds is the road used and traveled by the public for many years prior to 1874, while the defendant claims that the road

referred to in the deeds means the road as it was limited and bounded by the county commissioners in 1894. The defendant plead the general issue and filed a brief statement.

The case is stated in the opinion.

*Cleaves, Waterhouse & Emery,* for plaintiffs.

*F. A. Fox,* for defendant.

SITTING:  SAVAGE, C. J., SPEAR, CORNISH, KING, BIRD, PHILBROOK, JJ.

SAVAGE, C. J.   These are real actions, and all depend upon substantially the same state of facts. They come before us on report. The plaintiffs are the owners of cottage lots fronting on Long Sands Beach in York. The defendant's land abuts the lots on the rear. The single question in issue is, where is the line of the rear ends of the plaintiffs' lots? The lots are all a part of a tract of land conveyed by Jeremiah Donnell to Lebbeus Hill by deed dated November 10, 1874, and the titles of the plaintiffs come by mesne conveyances from Hill. In the deed from Donnell to Hill the front, or southeasterly line of the tract, towards the beach, was described as running "southwesterly by the northwesterly side of the road leading across 'Long Sands Beach,' forty rods, to the northeasterly corner of my pasture, as now walled in." The rear, or northwesterly, line was described as parallel with the front line, and "seven rods and twenty-two links" distant therefrom.

There is before us no record of the laying out of the original road across Long Sands Beach, and no evidence of the location of its boundaries as laid out. But that there was such a road, recognized as a legal highway, may be assumed, we think, from the fact that in 1889 the county commissioners, upon the petition of the municipal officers of York to locate and define the limits and boundaries of the way in accordance with R. S. (1883) chap. 18, sect. 11, on the ground that the boundaries were "doubtful, uncertain or lost," did define the boundaries of the way as a two rod road; and from the further fact that in 1894, upon a petition representing that the road was narrow and not safe nor, convenient for public travel and praying that it be widened and straightened, the county commissioners straightened the road and widened it to three rods. The

northwesterly line of the road as thus defined in 1889 has not been delineated upon the plan in the case, nor have we any means of determining whether it was coincident with the northwesterly line as determined in 1894. The latter line appears upon the plan.

The Donnell tract was cut up by Hill or his grantees into lots fronting on the road and one hundred feet in depth, and each of these plaintiffs owns one or more of these lots. The deeds to the plaintiff, Rounds, were prior to 1894, the deeds to the other plaintiffs, subsequent. Back of these lots there still remained in the Donnell tract a strip of land 30.02 feet wide, and this strip was owned by Lillian H. Davis. Since 1894 each plaintiff has bought of Davis land in the rear of his own lot. And in each deed the northwesterly line of the land conveyed, which is the line in dispute, is described as being "seven rods and twenty-two links" northwesterly from the "road" leading across "Long Sands Beach." The disputed line is seven rods and twenty-two links from the "road," as all agree. The problem, then, is to find where the road was, which was referred to in the deeds. As all these Davis deeds were subsequent to 1894, the defendant contends that the reference to the "road" in the deeds must be construed as meaning the road or way as it was limited and bounded by the county commissioners, in 1894. The plaintiffs, on the other hand, contend that the word "road" meant the road as wrought and traveled, and not the road as laid out, either originally or in 1894. They contend that it was the intention of the parties that the deeds should cover the land precisely as far back as the deed from Donnell to Hill went in 1874, that is, seven rods and twenty-two links from the northwesterly side line of the road as used in 1874. That line the plaintiffs claim was about five feet northwesterly from the highway line as determined in 1894. And as the line of the road is the starting point in both deeds, there is the same distance of five feet in the rear, between the lines contended for by the two parties. Between those lines the parcel in dispute.

In the first place, where was the 1874 line? When the line of a road is referred to as a boundary in a deed it is a question of intention whether the reference be to the road as laid out, or to the road as traveled and used, in case the road actually traveled lies in whole or in part outside the limits of the way as laid out. *Tibbetts*

v. *Estes,* 52 Maine, 566.   The intention is to be gathered from the language of the deed read in the light of existing conditions.   Sometimes other clauses in a deed will aid a doubtful expression, and make the intention clear.   Sometimes when the calls in a deed are applied to the face of the earth, a doubt arises as to which of two objects or places is meant.   The doubt may be resolved by the aid of parol evidence, throwing light upon intention.   It is not a question of law, it is a question of fact.   It is not a construction of the terms of a deed, it is the application of those terms to the face of the earth.   What the road was, and where the northwesterly line of it, as referred to in the 1874 deed, we must decide as a question of fact.   But in doing so, we adopt the reasoning of the court in *Sproul* v. *Foye,* 55 Maine, 162.   In that case, the proposition was discussed in these words:—"Did the parties refer to the road as located, or to the road as built?   To a mere line of location not wrought, not in use for public travel, or to the road that was wrought and in actual use as a public highway?   When a road is referred to in a deed as one of the boundaries of the land conveyed, we should ordinarily suppose that something more than a mere location was meant.   A road is a way actually used in passing from one place to another.   A mere survey or location of a route for a road is not a road.   A mere location for a road falls short of a road as much as a house lot falls short of a house.   Can the proposition be maintained that an invisible and unwrought location answers such a call better than a visible wrought road over which the public travel is passing daily?   We think not."   See *Brooks* v. *Morrill,* 92 Maine, 172.   Applying the foregoing reasoning to this case, we have no hesitation in saying that the road referred to in the 1874 deed was not the road as located, but the road as used.   The boundaries of the located way, if there had been any location, were "doubtful, uncertain or lost."   The boundary of the road as used was visible and certain.

Next, where on the face of the earth was the side line of the road as used in 1874?   This is a matter of dispute.   But there is evidence tending to show that there existed as long ago as 1880 the remains of a stone wall at several different places along the front side of the Donnell tract, by the road; that although the greater part of the wall had then disappeared, the sections that remained appeared to be substantially in a line following the course of the road, and as if

they had been parts of a continuous wall. There is evidence tending to show the contrary. To analyze it would serve no useful purpose. We think that the weight of the evidence preponderates in favor of the plaintiffs' contention, that there used to be a wall by the roadside, remains of which are even now in existence. There is credible testimony that some cottagers laid the front sills of their cottages on the wall, that carriages pasing along the road within three or four feet of the wall, and within the same distance of these cottages after they were built.

Now if there was in 1874, or had been previously, a wall separating the traveled road from the adjacent land, and public travel passed along by the side of that wall, the inference is a strong one that the wall marked the line of what was supposed to be the road, and that when the line of the road was referred to in a deed, it meant the line as marked by the wall, which was the physical boundary of the road. This inference is strengthened by the consideration that the westerly end of the line described in the 1874 deed was tied to the easterly corner of the Donnell pasture "as now walled in." The wall at the corner fixed the location of the line at that point. And the evidence shows, we think, that some part of the pasture wall still remains, and that it is substantially in the line of the old stone wall to the east, as claimed by the plaintiffs.

We accordingly sustain the contention of the plaintiffs that the deed of Donnell to Hill in 1874, beginning at the line of the old stone wall conveyed to a line seven rods and twenty-two links northwesterly from it.

That being so, the next question is, from what line is the distance northwesterly named in the Davis deeds since 1894 to be measured? Each of these deeds gives the distance as "seven rods and twenty-two links from the road."

In the first place there is no evidence in the record before us that the course of actual travel on the northwesterly side of the road differs from that in 1874. If the road, as used, was not changed prior to the Davis deeds, it follows that the "road" referred to in them is the same road that was referred to in the Donnell deed in 1874. And in that case, the call in these deeds of "seven rods and twenty-two links" would start at the same point as the call for the same distance started in the 1874 deed, namely, at the site of the old stone wall.

Besides this, each of the Davis deeds, after giving a particular description by metes and bounds of the tract conveyed, adds, "said tract being a part of the land conveyed" by Donnell to Hill in 1874. This latter description was doubtless inserted as a recital of the source of title, and not to locate the land. It cannot add to the particular description which precedes it. *Hathorn* v. *Hinds,* 69 Maine, 326; *Jones* v. *Webster Woolen Co.,* 85 Maine, 210; *Peasley* v. *Drisco,* 102 Maine, 17. But the 1874 deed being referred to, and thus being in the minds of the parties to the Davis deeds, it is significant that they used the same expression to indicate the starting point of the call in question as was used in the 1874 deed, namely "from the road," and then made the line run back from the road precisely the same distance as the same line did in the 1874 deed, namely "seven rods and twenty-two links." Under the circumstances, these facts almost compel the inference that the intention was to embrace in the description the land as far back from the road as the 1874 deed did. If not, we shall be driven to the conclusion that Davis, for some inconceivable reason, retained title to a little strip of land not more than five feet wide at the back end of each lot. We are persuaded that she did not intend to do so.

Upon the whole we conclude that the plaintiffs' titles extend back seven rods and twenty-two links from the line of the road as it was used in 1874, and marked then by a wall or the remains of one. This covers all the land claimed by them in these suits. The certificate in each case will be.

*Judgment for the plaintiff.*