MAUD OLDFIELD *vs.* FLORENCE B. SMITH.

Bristol.    October 23, 1939. — December 28, 1939.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Easement. Prescription. Way*, Private: creation, location. *Deed*, Construction.

An easement by prescription for a water pipe in a neighbor's land was not gained merely by its maintenance therein for more than twenty years without the neighbor's knowledge of its existence, gained from his deed or otherwise.

A deed of a lot from which a water pipe ran to a public street through another lot also owned by the grantor did not grant by implication or necessity an easement to maintain the pipe in the second lot if the granted lot could be supplied with water from another street at moderate expense.

A right of way granted in a "lane," not particularly described, as appurtenant to granted premises bounded by the lane, extended no further than the lane as it then actually existed or was clearly defined as a contemplated way by plan or otherwise.

BILL IN EQUITY, filed in the Superior Court on July 20, 1937.

A final decree was entered by order of *Hurley*, J. The plaintiff appealed.

*N. Lemaire, Jr.*, (*F. P. Cohen* with him,) for the plaintiff.

*B. E. Sullivan*, (*W. G. Powers* with him,) for the defendant.

COX, J. The defendant is the owner of a lot of land that fronts on Chester Avenue in Taunton. The plaintiff owns a lot to the north and in the rear of the defendant's lot. According to a plan attached to the master's report, the easterly bound of the defendant's lot, beginning at the southeasterly corner, runs northerly by land of Reed and Barton and by a lane, eighty-one feet to a corner, thence northeasterly by the lane, thirty and thirty-three one-hundredths feet to the southeasterly corner of the plaintiff's lot. The easterly bound of the plaintiff's lot is a continuation of this last described bound and is by "said" lane. Prior to 1882, one Lawson C. Smith was the owner of these two lots and adjoining land, including a strip about fifteen feet in width that extended in a northeasterly direction from the easterly line of what is now the defendant's lot to West Britannia Street, a distance of about three hundred twenty feet. In June, 1882, Smith laid out this fifteen foot strip as a lane running southerly from West Britannia Street, and caused a plan of it to be made and recorded in the registry of deeds, a copy of which is attached to the report. Since that time the lane has been used as a way by the public, and has been known as Chester Court since 1891. There is no other recorded plan in the registry that shows this court by any different layout, and the plan in the city engineer's department corresponds with the plan attached to the report. The lanes, fifteen foot strip and court hereinbefore mentioned refer to the way that extends from the easterly boundary line of the defendant's lot northeasterly to West Britannia Street. In 1881, Smith, by arrangement with the city, installed an underground water system, running through what is now the defendant's lot (hereinafter referred to as the defendant's

lot) from the water main in what is now Chester Avenue
but was then known as Chester Court, a private way, for
the purpose of supplying water to the house on what is
now the plaintiff's lot (hereinafter referred to as the plain-
tiff's lot). At that time there was no house on the de-
fendant's lot. This pipe line enters the defendant's lot on
the northerly side of Chester Avenue, about eleven feet
westerly from the Reed and Barton property line, and
runs at about a right angle northerly, approximately one
hundred twenty-five feet, through the entire length of the
defendant's lot and is substantially parallel with its easterly
boundary line. On the sketch filed in the city hall at the
time of installation by the water department, there is
nothing to indicate any way as existing where the pipe is
laid; the sketch merely shows that it runs entirely through
Smith's private land. The pipe line has been used for no
other purpose than to supply water to the house on the
plaintiff's lot, and that house has not been supplied with
water from any other source. No changes have been
made in the pipe line since it was laid. It has remained
underground without replacement or repair up to the
commencement of this action, which was when the plain-
tiff attempted to replace the water pipe in July, 1937, and
the defendant refused to permit any digging or work on
her premises. The plaintiff seeks to enjoin the defendant
from interfering with the alleged easement to maintain
the water pipes. She also contends that she has a right of
way over a lane leading from West Britannia Street all the
way through to Chester Avenue, in part over the defend-
ant's lot, which the defendant has obstructed, and asks
that the defendant be enjoined from interfering with her
use of the way for all purposes as a street.

The case was referred to a master, whose report was
confirmed by interlocutory decree, and a final decree dis-
missing the bill was entered. It recites in the ordering
clause the defendant's ownership of her lot, that the plain-
tiff has no right, title or interest in that lot, and, more
particularly, no easement of way over it from the plaintiff's
land to Chester Avenue, and no easement for the main-

tenance, replacement or repair of water pipes in the defendant's land. The plaintiff appealed from the final decree. The evidence is not reported.

1. The master expressly found that there is no right or easement with respect to the water pipes arising from any express grant. None of his subsidiary findings is inconsistent with this, and it must be taken as true. *MacLeod* v. *Davis*, 290 Mass. 335, 338.

No prescriptive right to maintain the water pipes is made out upon the record. During the time that Lawson C. Smith owned both lots, no easement was created or began to be created in favor of one lot operating as a service or burden upon the other. *Johnson* v. *Jordan*, 2 Met. 234, 239. From 1884 to 1889 the lots were owned by different individuals, but in 1889 Catherine E. Smith became the owner of both lots, so that the intervening period between 1884 and 1889 cannot now be regarded as a measure of any possible prescriptive right. *White* v. *Chapin*, 12 Allen, 516, 517, 518. In 1901 Catherine E. Smith conveyed the plaintiff's lot, and since that time the two lots have never been owned by the same person. The defendant became the owner of her lot, the alleged servient tenement, in 1914, but the master expressly found that she was not aware of the existence of the pipe line until the attempt to excavate was made in July, 1937. He further found that her warranty deed makes no mention of any water pipe, and that the physical layout of the line was underground and has not been replaced or repaired during her ownership. There is nothing in the record from which the acquiescence of the defendant to the maintenance of the water pipes can be found. In these circumstances no prescriptive right has been established as against the defendant with respect to them. *Carbrey* v. *Willis*, 7 Allen, 364, 368. *Hannefin* v. *Blake*, 102 Mass. 297. *Gray* v. *Cambridge*, 189 Mass. 405, 418. Compare *Ludlow Manuf. Co.* v. *Indian Orchard Co.* 177 Mass. 61, 63.

We are of opinion that the right to maintain and use the pipe line is not established as the result of any implied grant. In 1901 Catherine E. Smith, who was the owner of both

lots, conveyed the plaintiff's lot to James R. Smith, from whom, through mesne conveyances, the plaintiff derives her title. In this deed of 1901 there is no specific mention of any water pipes or the right to maintain them, but the *habendum* clause contains the words "the granted premises, with all the privileges and appurtenances thereto belonging." The pipe line was in existence at the time this deed was given. It is a settled rule of construction that a grant of any principal thing shall be taken to carry with it all that is necessary to the beneficial enjoyment of the thing granted that it is in the power of the grantor to convey. *Johnson* v. *Jordan*, 2 Met. 234, 240. The burden of proving the intent of the parties to create an easement that is unexpressed in terms in a deed is upon the party asserting it, and, when the evidence establishes the requisite intent, "it is now settled that the necessity of the easement for the enjoyment of the land conveyed is not an absolute physical necessity, but no more than a reasonable necessity." *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.* 284 Mass. 100, 105. The question, therefore, on this aspect of the case, is whether the use of the water pipes through the land of the defendant was necessary for the beneficial enjoyment of the plaintiff's land, and the answer to this question involves the inquiry whether water pipes can conveniently be laid and made available with reasonable labor and expense without going through the defendant's land. *Thayer* v. *Payne*, 2 Cush. 327, 332. *Randall* v. *McLaughlin*, 10 Allen, 366, 368, and cases cited. The master found that there was no water main in Chester Court, but that it is possible to provide water for the plaintiff's lot by running the water pipes through this court, and by connecting with the water main in West Britannia Street at a cost of approximately $160, and that the cost in the present location through the defendant's lot would be approximately $65, if a charge were to be made. In the circumstances, we are of opinion that the plaintiff has no rights with respect to the maintenance and use of the water pipe line by way of an implied grant.

2. The plaintiff rests her claim that she has a right of way over the defendant's land upon the theory of an express

grant of such an easement to one of her predecessors in title. In 1882, as hereinbefore appears, when Lawson C. Smith was the owner of the area including both lots in question, as well as the strip comprising the lane extending out to West Britannia Street, the southerly end of the lane, as laid out by him, ended at the easterly line of the defendant's lot. In his deed of 1884 conveying the defendant's lot to Catherine E. Smith, there is nothing to suggest that the lane in question extended southerly beyond the easterly boundary of that lot. The grantee in that deed was given "a right of way over the lane from said tract to Britannia Street." In Smith's deed to Catherine E. Smith in 1889 of the plaintiff's lot, the description of the land begins as follows: "A lot of land lying on the westerly side of a way leading from Britannia Street to Chester Court . . . ." It was not until 1891 that Chester Avenue was accepted by the city as a street. Prior to that time, it was known as Chester Court. The way or lane leading southerly from West Britannia Street has been known as Chester Court since 1891. By deed dated January 29, 1901, Catherine E. Smith conveyed the plaintiff's lot by warranty deed, describing the land conveyed as "a tract of land and the buildings thereon . . . on the northwesterly side of a lane leading from West Britannia Street to Chester Court, bounded as follows . . . ," followed by a description of the land by metes and bounds, the last of which is as follows: "thence by said lane N. 25½° E. 60 feet to point of beginning. Being the property conveyed to me by deed of Lawson C. Smith recorded in Book 477, page 271 Bristol County North District Deeds. Together with a right of way over said lane for all purposes as a street between West Britannia Street and Chester Court." The deeds in the chain of title from the grantee in this deed to the plaintiff contain references to "a lane running" or "leading" from West Britannia Street to Chester Court, to the "right to use said lane as a public way to and from Chester Court and West Britannia Street," or all ". . . rights and easements in said lane."

The plaintiff seeks to invoke the rule that, when a grantor

conveys land as bounded by a street or way, this is not merely a description by the grantor, and his heirs are estopped to deny that there is a street or way to the extent of land so bounded on the way. In *Parker* v. *Smith*, 17 Mass. 413, it was said, at page 416, that "when at the time of the grant there is a way, in fact, existing, which corresponds with the one mentioned in the deed, and this way does not extend through the whole line of the land granted, the parties shall be supposed to have had reference to such actually-existing way, as a boundary, as far as it extends; and not to have contemplated a way coëxtensive with the land." In *Stetson* v. *Dow*, 16 Gray, 372, it was said at page 373: "It is now well settled that when a grantor conveys land bounding on a street or way, he and his heirs are estopped to deny the existence of such street or way; and the grantee acquires by the deed a perpetual easement or right of passage on, upon and over it, from the full enjoyment of which he can never afterwards be excluded. And this is a right, not only coextensive with the land conveyed, but for the entire distance of the way, as it is then actually laid out or clearly indicated and prescribed." *Tobey* v. *Taunton*, 119 Mass. 404, 410. In *Ralph* v. *Clifford*, 224 Mass. 58, the court, after stating the rule laid down in the cases just cited, to the effect that the right of way of the grantee and his successors in title therein includes the entire length of the way as then actually laid out or defined, said, at page 60: "This is the contention of the plaintiffs and it is fully sustained by the authorities, and applies as well to a contemplated way if clearly indicated as to an existing street." In 1889, when Lawson C. Smith conveyed the plaintiff's lot to Catherine E. Smith, which he referred to as a lot of land lying on the westerly side of a way leading from Britannia Street to Chester Court, he was no longer the owner of the defendant's lot, and even if he had attempted, as he did not, to grant a right of way over the defendant's lot, he could not have done so because he did not then own it, *Les* v. *Alibozek*, 269 Mass. 153, 157; and, although the reference is to a way leading to Chester Court, there is nothing in the record to show that any such way

was laid out, clearly defined, or, if contemplated, clearly indicated at the time of the giving of this deed. In 1901, when Catherine E. Smith conveyed the plaintiff's lot, by deed containing the language hereinbefore referred to, she was the owner of the defendant's lot and could have granted a right of way over it. The remaining question in the case is whether she did.

It is to be observed that the language in the deed of 1901 conveys a right of way over "said lane . . . between West Britannia Street and Chester Court." The plaintiff bases her contention upon the proposition that she is entitled to a right of way out to what is now Chester Avenue, within the rule stated in *Parker* v. *Smith*, 17 Mass. 413 and the cases cited in connection with that case; and in addition to the cases already cited, she relies upon *Fox* v. *Union Sugar Refinery*, 109 Mass. 292, 295, where it was held that a conveyance of land bounding on a private way not defined in the deed, but shown upon a plan referred to therein and recorded in the registry of deeds, estops the grantor to deny the existence not only of that way, but of any connecting ways represented on the plan that will enable the grantee to reach public ways in any direction as far as the grantor's title extends. The plaintiff appears to base her contention on the fact that, when Catherine E. Smith conveyed the plaintiff's lot, there was a lane or way leading from West Britannia Street to Chester Court (now Chester Avenue). As to this the master found, in addition to the facts already narrated as to the layout of the lane and the recorded plans, that the house on the defendant's lot was built in 1891, and that on the plaintiff's at some time prior thereto. A division picket fence ran the entire distance between the two lots along the back line of the defendant's lot "right up to the Reed & Barton property line." There were two gates in this fence, a small one for foot travellers and a larger one for wagons. The larger gate was used only by vehicles to pass from Chester Court (evidently the lane) to the house on the defendant's lot for the delivery of wood, coal and other bulky substances. This fence continued in place for many years after 1901 but it finally fell

into decay and was removed. It is to be noted that this fence, in order to reach the Reed and Barton line, extended completely across the lane. Prior to 1901, a fence ran along the entire Chester Avenue frontage of the defendant's lot "right up to the Reed & Barton line." Up to 1901 or 1902, no passage through the defendant's lot was allowed to anyone except four members of the fire department who were given special permission to pass through when necessary. In order to do this, they entered through the gate on Chester Avenue and passed through the defendant's lot, by the house, and out the back gate to Chester Court. About 1901 or 1902, the Reed and Barton Corporation erected a new fence along their property line, commencing at the southeasterly corner of the defendant's lot and extending along her easterly bound to the southeasterly corner of the lane, thence along the southeasterly bound of the lane for some distance. In "so doing a small opening was broken and left open in the front fence of . . . [the defendant's lot] on the street" at its southeasterly corner. This opening was "only a matter of a foot or so at the time, but employees at the Reed & Barton factory soon took advantage of this small opening as a short cut to go to work and they started to pass through and walk over . . . [the defendant's lot] next along the Reed & Barton line, and then out to Chester Court and out to West Britannia Street." It soon became a regular thing, for anyone who desired, to walk through the defendant's lot in this way. Through use the opening in the fence gradually became widened until it was about twenty-four to twenty-eight inches in width, and a well-worn and beaten path became established along the Reed and Barton line, "not over twenty-eight to thirty inches wide at any time. From such a start the public have walked over this area continuously right up to July 1937." Except as hereinafter appears, there was no evidence that anyone used this way under any claim of right, and, in so far as the public is concerned, no use was ever made of the way other than as a foot path. It is not wide enough for vehicles and was never used by them. Except for the opening already described, the fence on Chester

Avenue has remained intact from 1902. There was evidence that James R. Smith, to whom Catherine E. Smith conveyed the plaintiff's lot, and who owned it from 1901 to 1908, had stated in his lifetime that he considered that he had a right in the lane only up to the back fence of the defendant's lot. There was evidence also from a witness who was present at the time James R. Smith bought the plaintiff's lot, that the fence along the back line was pointed out to him "as the limit of his rights in the lane and that the lane itself did not belong to him." There was no evidence of any actual use made or claimed by James R. Smith or by Jennie C. Smith, his successor in title, who was the owner from 1908 to 1917. The plaintiff's lot was occupied by various tenants from 1901 to 1917, and, as far as any exercise of rights of passage over the defendant's lot by them is concerned, there was no evidence to show that they made any uses different from those of the public in general. The use of a portion of the defendant's lot for purposes of passage by the successor in title to Jennie C. Smith was no different from that of the general public and was confined to the same area along the Reed and Barton line, and this is true of the use made by the plaintiff and by one of her tenants. There was evidence that there had been no travel at all over the defendant's lot prior to 1901 or 1902. Just prior to July, 1937, the Reed and Barton Corporation tore down the old line fence and erected a new one upon its own land, four feet easterly of the location of the old fence. This four-foot area was made into a cinder walk and has since been held open to the public use as a walk from Chester Avenue to Chester Court and out to West Britannia Street.

We are of the opinion that the facts do not bring the case within the rule, as contended for by the plaintiff. It is not shown that in 1901 there was any way actually laid out, clearly defined or, if contemplated, clearly indicated.

Apart from this, we think that the language in the deed of January 29, 1901, from Catherine E. Smith to James R. Smith is not clear in respect to the lane therein referred to. At that time there was no lane leading from West Britannia

Street to Chester Court, now Chester Avenue. As already pointed out, the lane stopped at the southerly end at the defendant's easterly line. The reference to the lane with the context should be construed as referring to the lane then in existence. The right of way granted in that deed was over "said lane," and the words "said lane" relate to "a lane leading from West Britannia Street to Chester Court" and described in the right of way grant as "between West Britannia Street and Chester Court."

Although parol evidence is not admissible to prove that the parties intended something different from that which the written language expresses, or which may be the legal inference and conclusion drawn from it, where the words are doubtful or ambiguous it is always competent to give in evidence existing circumstances, such as the actual condition and situation of the land, passages and other local objects, in order to give a definite meaning to the language used in the deed and to show the sense in which particular words were probably used by the parties, especially in matters of description. *Salisbury* v. *Andrews*, 19 Pick. 250, 253. *Briggs* v. *Connors*, 243 Mass. 1, 4. *Langevin* v. *Fletcher*, 273 Mass. 543. Then, too, where the language of an instrument is doubtful, evidence of the practical construction by the parties is admissible to explain and remove the doubt. *Stone* v. *Clark*, 1 Met. 378, 381. *New York Central Railroad* v. *Stoneman*, 233 Mass. 258, 263. *Sutcliffe* v. *Burns*, 294 Mass. 126, 131–132. In view of what has been said, we are of opinion that the case is distinguishable from one where an indefinite way has been granted and is either at the time or afterwards, by the common consent of the grantor and the grantee, practically located and determined, and as thus located is used and acquiesced in by all parties interested for a long term of years and accordingly is regarded as the way intended to be granted by the deed. See *Cotting* v. *Murray*, 209 Mass. 133.

Catherine E. Smith built the house on the defendant's lot in 1891 and appears to have lived there until her death in 1911. Chester Avenue (formerly known as Chester Court) was laid out as a public highway in 1891, and in that

year the lane leading from West Britannia Street became known as Chester Court. Ten years later, in 1901, this same Catherine E. Smith, by deed, purports to grant a right of way over a lane between West Britannia Street "and Chester Court." At that time the only way in that vicinity known as Chester Court was the lane itself which ended at the easterly line of the defendant's lot. It would seem that, if she had intended to grant a right of way over her land from the plaintiff's lot out to Chester Avenue, no such way then existing, she would have defined it, or, at least, would have described its terminus, a public highway, by its correct name.

We think it does not sufficiently appear from the facts found by the master that the parties to the deed of January 29, 1901, intended a grant of a right of way out to what is now Chester Avenue, but that, on the contrary, it was their intention to limit the rights of passage over the lane as it then existed, that is, from the easterly line of the defendant's lot, out to West Britannia Street.

*Decree affirmed with costs.*