180 A.2d 282 (1962)
RIVAS & RIVAS, INC., a corporation of the State of Delaware, Robert G. Correll and Betty W. Correll, his wife, Eugene C. Pajewski and Mary E. Pajewski, his wife, Richard P. Smith and Dorothy G. Smith, his wife, and Frederick W. Hartmann and Mary N. Hartmann, his wife, Plaintiffs,
v.
RIVER ROAD SWIMMING CLUB, a corporation of the State of Delaware, Defendant.
Court of Chancery of Delaware, New Castle.
April 25, 1962.
*283 Walter P. McEvilly, of Killoran & Van Brunt, Wilmington, for plaintiffs.
John T. Gallagher, of Herrmann, Bayard, Brill & Gallagher, Wilmington, for defendant.
SHORT, Vice Chancellor.
In this action plaintiffs seek an injunction restraining defendant from obstructing and interfering with plaintiffs alleged rights to use a portion of a certain street for roadway purposes. They also seek a mandatory injunction requiring defendant to remove certain obstructions from the bed of said street. The theory of plaintiffs cause of action is twofold: (1) That plaintiffs, by express grant, have an easement "of way, use and privilege" of all streets and avenues in the development known as "Gordon Heights", and (2) that all streets and avenues in Gordon Heights have been dedicated and accepted as public roads. Defendant claims ownership of the parcel of land in dispute, denies that plaintiffs have a right-of-way thereover, and contends that, in any event, plaintiffs are barred from seeking the relief prayed for in the complaint under the doctrine of unclean hands, waiver and estoppel. Motions for summary judgment have been filed by both parties and the matter is now before the court on the pleadings, affidavits and briefs filed. This is the decision on these motions.
The record tends to establish the following facts: By deed dated December 21, 1889 William Beadenkopf acquired title to a tract of land containing 144 acres, more or less, in New Castle County, Delaware. This tract comprised what is now known as Gordon Heights. At some time following the acquisition of title by Beadenkopf a plot of Gordon Heights was filed in the Office of the Recorder of Deeds for New Castle County and was entered in Deed Record F, Vol. 16, page 601. This plot has since disappeared from the records in the Recorder's Office, the circumstances of its disappearance and the time thereof being unknown. Reference to the missing plot is made in several deeds by Beadenkopf and others, commencing in 1892. In 1912 a plot entitled "Gordon Heights" was prepared by Francis A. Price, surveyor, which plot was recorded on March 21, 1934 in Deed Book G, Vol. 37, page 601. In this plot reference is made to the earlier and now missing plot. While there is some uncertainty as to the circumstances under *284 which the 1912 plot was made and subsequently recorded, I think it fair to say that this plot was prepared by Price at the request of one MacNair, an officer of Hillcrest Realty Company, a subsequent owner of a portion of Gordon Heights, for the purpose of subdividing certain of the lands of Hillcrest Realty Company. This plot purports to lay out in blocks, streets, avenues and roads the entire area of Gordon Heights, and subdivides the blocks of Hillcrest Realty Company into lots. It purportedly shows the owners of certain blocks and lots. It designates the streets, avenues and roads by name, by courses and distances, and by width. The triangular area which is the subject of this controversy is designated on said plot as that part of Haines Avenue which begins at the angle formed by the intersection thereof with the southerly side of River Road and the easterly side of Eighth Street, then in an easterly direction along the southerly side of River Road and across the bed of Haines Avenue to the northwest corner of the intersection of Haines Avenue and Seventh Street, then in a southerly direction with the westerly side of Seventh Street across the bed of Haines Avenue to the southwest corner of the intersection of Seventh Street and Haines Avenue, then in a westerly direction with the southerly edge of Haines Avenue to the point of beginning.
On February 7, 1918 William Beadenkopf and others executed and delivered a deed to Spring Hill Light and Water Company conveying title to the streets and avenues as shown on the plot now missing, excepting, however, streets lying southeast of River Road and northeast of Lore Avenue.[1] This conveyance contained the following language: "Subject, However, to the right of way of individual owners of land in Gordon Heights, including the rights of the respective Grantors herein (if any they have), or the general public in and to the streets, avenues and ways aforesaid." On March 20, 1934 the Spring Hill Company, grantee of Spring Hill Light and Water Company, deeded said streets and avenues to the Mayor and Council of Wilmington. The deed made specific reference to the missing plot. It was also made expressly subject to the rights of individual land owners in Gordon Heights and the general public in said streets and avenues. No conveyance of the streets and avenues here material has since been made by the Mayor and Council of Wilmington.
Plaintiffs trace their title through mesne conveyances from William Beadenkopf. The first of these is a deed by Beadenkopf and wife to May A. Clark dated July 20, 1892. This deed referred to the missing plot. It and subsequent conveyances in plaintiffs' chain expressly granted easements to the use of all streets and avenues in Gordon Heights.
The immediate deed to plaintiff Rivas & Rivas, Inc., (hereinafter Rivas) dated June 27, 1959, expressly excepted the beds of streets "as laid out on the Plan of Gordon Heights" and also expressly granted the right of way, use and privilege of said streets. The other plaintiffs herein derived title through plaintiff Rivas & Rivas, Inc.
Defendant acquired title to "Lots Nos. 196 to 216 inclusive on the plot plan of Gordon Heights" by deed of Euclid, Inc. dated October 2, 1958. On that date the only "plot plan" appearing in the records which showed lots numbers 196 to 216 was the plot G-37-601. Defendant's title to the lots named is traceable by mesne conveyances to William Beadenkopf, who conveyed a tract, including such lots, to Charles M. Townsend by deed dated July *285 20, 1901. The deed of Euclid, Inc. to defendant, in addition to conveying the numbered lots therein mentioned, purports to convey the triangular parcel of land which is the subject matter of this action and in which plaintiffs claim a right of way. There is no prior deed in defendant's chain of title which pretends to expressly convey the parcel in dispute. Euclid, Inc. acquired title by deed of Hillcrest Realty Company, which deed describes lots Nos. 197 to 216 inclusive as bordering on the southerly side of Haines Avenue. Hillcrest Realty Company acquired title by deed of Suburban Land Company dated April 9, 1909. This deed contains the following language: "Excepting thereout the beds of all Avenues and Streets but expressly including the right of way, use and privilege of all the Avenues and Streets of Gordon Heights."
The parties agree that prior to defendant's construction of a swimming pool on the lots described in its deed and surfacing of the parcel in dispute, the whole area described in plaintiffs' and defendant's deeds, including Haines Avenue between Eighth and Fourth Streets and other streets designated on the plot G-37-601, was in a natural, wooded and unimproved state, with the exception of certain footpaths. There were no physical markers of the streets mentioned, nor any evidence of the use thereof as streets or ways. Following the acquisition of title to lots Nos. 197 to 216 inclusive, defendant proceeded to have the same cleared and constructed its swimming pool. It also cleared the disputed land and surfaced the bed thereof for a parking area for its members and guests. Certain plans drawn in connection with contracts let by defendant show the disputed area as Haines Avenue, or Haines Avenue Extended. Construction of the pool and parking area was completed at the end of May 1959.
On June 27, 1959, plaintiff Rivas acquired a tract of land in Gordon Heights consisting of three blocks of lots on the southerly side of Haines Avenue extending from Fourth to Seventh Streets. Thereafter, plaintiff Rivas commenced clearing this land including the bed of Haines Avenue from Fourth to Seventh Streets. When the lands had been cleared Rivas began the construction of dwelling houses and entered into agreements for the installation of water mains and lines, sewers and road paving for certain streets, including Haines Avenue. These agreements call for the extension of water and sewer lines which had been laid beneath the bed of Haines Avenue at some time prior to the acquisition by defendant of its lands. The improvements of Haines Avenue between Fourth and Seventh Streets was made in accordance with State Highway Department specifications and Haines Avenue was accepted for maintenance by the State Highway Department on December 9, 1960. On May 18, 1960 defendant wrote to plaintiff Rivas indicating its intent to close off access to Rivas' property by way of Haines Avenue between River Road and Seventh Street. Thereafter, defendant erected barricades across Haines Avenue at Seventh Street. On each occasion when barricades were placed by defendant plaintiffs' president removed the same under the claim that the area blocked off was a part of plaintiffs' right of way.
Defendant contends that plaintiffs are barred from seeking the relief prayed for in their complaint because of waiver, estoppel and unclean hands. I am satisfied that none of the doctrines mentioned are applicable to the circumstances of this case. Waiver is a matter of intention and I see nothing in the circumstances recited from which an intention to waive can be implied. Moreover, waiver as applied to the facts of the present case would be akin to abandonment. It is clear that where an easement has been acquired by grant mere non-user alone does not operate as an abandonment. Wolfman v. Jablonski, 34 Del.Ch. 67, 99 A.2d 494. No circumstance other than non-user is suggested as evidencing an intention on the part of plaintiffs or their predecessors to abandon *286 the right to use the streets in Gordon Heights.
The doctrine of equitable estoppel is equally inapplicable. In order to apply that principle it must appear that the plaintiffs, by their voluntary conduct, have deliberately or unconsciously led defendant, in reliance upon that conduct, to change its position for the worse. Wolf v. Globe Liquor Company, 34 Del.Ch. 312, 103 A.2d 774. Defendant contends that plaintiffs and their predecessors sat by and made no complaint while defendant was clearing its lots and the parking area and constructing its swimming pool and surfacing the parking area. There is nothing in the record to suggest that plaintiffs, or their predecessors, had any knowledge that defendant intended to appropriate the parking area to its exclusive use. The clearing of the area and surfacing thereof was not in any way inconsistent with the rights of other owners in Gordon Heights to use the same for roadway purposes. Defendant's actions were in no way indicative of an intention to bar other owners from the use of Haines Avenue between River Road and Seventh Street for such purposes. When defendant indicated such intention in writing plaintiffs immediately objected and asserted their right to use the same.
Nor does the doctrine of unclean hands have any application in the circumstances presented. The basis of defendant's contention under this principle is that plaintiff Rivas itself undertook to exercise dominion over an adjoining portion of Haines Avenue and other streets and that by so doing its hands were rendered unclean, thereby precluding any complaint on its part about defendant's exercise of similar acts of dominion and ownership. It is obvious from the record made that plaintiff Rivas, in clearing and improving the roadways of Haines and other avenues, was in no sense attempting to assert ownership of the beds of such streets. In connection with its development of the area it was providing residents and prospective residents thereof the necessary means of ingress and egress to their properties. The clearing and construction of roads was pursuant to agreements with public authorities and with a view to an assumption of maintenance thereof by the State Highway Department. Water and sewer lines were laid under the road beds of said streets with the like intention of their becoming a part of the municipal system. These too were laid pursuant to agreements with public authorities. While Rivas may have, in a sense, exercised acts of dominion over that portion of Haines Avenue and other streets which it improved, it can hardly be said that such exercise was under any claim of ownership thereof. I find that plaintiffs are not barred from maintaining this action because of waiver, estoppel or unclean hands.
Defendant contends that since the original plan of Gordon Heights, F-16-601, has disappeared from the record the layout of streets and avenues as thereon shown is unknown and that this plan may not be adverted to in connection with this proceeding. There is in the record the affidavit of Fred Somers Price. Mr. Price is the son of Francis A. Price, surveyor, who prepared the plot of Gordon Heights before referred to as G-37-601. It appears that Fred Somers Price became associated with his father as a surveyor about the year 1908 and continued in such association until his father's death, which was sometime subsequent to 1912 when G-37-601 was prepared. The Price affidavit discloses that the roads, avenues and ways shown on the plot G-37-601 are the same as those which appeared on the plot F-16-601. It states that the purpose of G-37-601 was to revise the larger lots appearing in F-16-601 into smaller lots with respect to areas owned by Hillcrest Realty Company in Gordon Heights. It further asserts that the affiant, Fred Somers Price, has personal knowledge and recollection of the matters referred to. There is nothing in the record which in any way challenges the statements made in the Price *287 affidavit. Therefore, there is competent evidence tending to show that the streets and avenues as laid out on plot G-37-601 are the same streets and avenues as were shown on plot F-16-601. Defendant also makes point of the fact that the record fails to disclose at whose instance either of said plots were prepared or recorded. With respect to plot F-16-601 the only fair assumption which can be made with respect to this issue is that it was made and recorded at the instance of William Beadenkopf. Not only did Beadenkopf convey lands in Gordon Heights according to that plot but he expressly, in such conveyances, excepted the street beds according to the plot and granted rights of way to the use of such streets. In any event, it is apparent that Beadenkopf in disposing of parcels of land within the area known as Gordon Heights adopted the plot F-16-601. Having adopted it, his conveyances in accordance therewith are as effective to bind him and those claiming under him as though he himself had prepared and recorded the plot. Richardson v. O'Hanrahan, 83 Cal.App. 415, 256 P. 1103; Manziel v. R. R. Commission, Tex.Civ.App., 197 S.W.2d 490; Dodge & Bliss Co. v. Mayor & Aldermen of Jersey City, 105 N.J.Eq. 545, 148 A. 783.
Defendant concedes that the deeds in plaintiffs' chain of title expressly grant easements to the use of all streets and avenues in Gordon Heights. Defendant contends, however, that at the time of the conveyance from Beadenkopf to May A. Clark, from which plaintiffs' titles are derived, it was the intention of Beadenkopf to grant rights of way only in those streets and avenues then existing and, as it says, "possibly, in those streets and avenues that he or his heirs might subsequently develop and lay out." Defendant's interpretation of the intention of Beadenkopf in granting express rights of way is not acceptable. The language of the grants is plain and unambiguous. There is nothing therein to indicate the intention that the rights of way were confined to existing streets or to those which might be subsequently developed by Beadenkopf. Moreover, the intention to grant rights of way in all streets and avenues as set out on the plot is evidenced by the subsequent conveyance of Beadenkopf of such streets and avenues to Spring Hill Light and Water Company with the specific reservation therein of the right of way of individual owners or the general public in and to such streets and avenues. I find, therefore, as a fact that it was the intention of Beadenkopf to grant rights of way in the streets and avenues as shown on the plot F-16-601.
But defendant contends that a mere survey for a road does not establish a road, or, in other words, that the grant of an easement of a right of way can only exist in a way which has physical existence. Defendant cites certain cases in support of this proposition. Sproul v. Foye, 55 Me. 162; Brooks v. Morrill, 92 Me. 172, 42 A. 357; Rounds v. Ham, 111 Me. 256, 88 A. 892; Oldfield v. Smith, 304 Mass. 590, 24 N.E.2d 544. The Sproul case apparently deals with an easement by implication. In this type of easement it is safe to say that the right is ordinarily accompanied by physical existence of the subject of the easement. But even as to easements of this nature, it is not always necessary that such have physical existence. See Olson v. Arruda, 328 Mass. 363, 104 N.E.2d 145. In the Rounds and Brooks cases the courts were dealing with roads of uncertain location or those actually opened at a location differing from the original survey. In the Oldfield case the court was called upon to construe ambiguous language in the grant of an easement. The court found that there was no express grant of an easement and its remaining discussion pertained to implied easements. Defendant also cites Gallagher v. Williams, 36 Del.Ch. 310, 129 A.2d 554 as holding that the subject of an easement must have physical existence. The Gallagher case also dealt with an easement by implication. The Chancellor, of course, rightly held that in order to establish such an easement *288 it must appear that the "alley existed at the time the land was originally sub-divided."
Cases which are concerned with easements by implication or by prescription are inapposite to defendant's contention that the subject matter of an express grant of a right of way must have physical existence. The inapplicability of such cases seems to be recognized by the Supreme Court of Illinois in Brunotte v. De Witt, 360 Ill. 518, 196 N.E. 489. The court said: "The defendants contend further that they took tracts 4, 5 and 6 free from the burden of the easement because it was not in a state of open and notorious, physical, visible, or existing condition at the time of the sale. Cases are cited where the easements sought to be enforced were created by implication. They are not applicable to the facts of the present case, where the defendants had notice of the complainant's easements over their property." See also Brooks v. Voight, 224 Md. 47, 166 A.2d 737. In most cases dealing with easements by implication or by prescription it is necessary that the subject of the easement have physical existence in order to charge persons having connection therewith with notice of the existence of the easement. This is not so as to easements by express grant where persons are afforded notice thereof by record. Therefore, defendant's contention that a street which is the subject matter of an express grant of right of way thereover must have physical existence is without merit.
Defendant also contends that this case is indistinguishable from the case of Maciey v. Woods, Del., 154 A.2d 901. In the cited case, where the facts bore some similarity to those here involved, Vice Chancellor Marvel held that plaintiffs had been granted a private easement in a certain strip of land and that it was within the power of the grantor of the easement to revoke it before the street had been built. This ruling was based upon a construction of the language creating the easement in the light of surrounding facts and circumstances. The Supreme Court, on appeal, held that there was no easement by implication; that under the circumstances appearing the grantor did not intend to grant the use of a private way; and "that the ambiguous language in the plaintiffs' deed must be held to be merely a grant of the right to the use of the proposed extension when it becomes a street or, perhaps, as long as Weldin reserved it for future use as a street." It is apparent from a reading of the Supreme Court opinion that the court regarded the language of the grant as ambiguous and the surrounding circumstances as insufficient to establish an intent to grant a private easement. The court was obviously swayed by the fact that the proposed street was originally intended to provide a connection between certain roads in separate developments. In order to provide the connecting road it would have been necessary for the developer of the adjoining development to build a street which would connect with that which was the subject of the controversy. The connecting street in the adjoining development had never been constructed or laid out. The lot owners who were the parties to the action had ample frontage on a boulevard in the development and did not require the subject street for an outlet. The proposed street would merely have run from the boulevard to a dead end at the rear of the parties' lots. The Maciey case dealt with a peculiar factual situation and I do not regard it as applicable to the circumstances of the present controversy.
Defendant contends that plaintiffs have access over other streets and avenues to main arteries of travel to the west of plaintiffs' property, and that it is not necessary for plaintiffs to proceed by way of that part of Haines Avenue which is in controversy to facilitate their travel. Assuming this to be the fact, it can not be interposed as a defense to plaintiffs' right by express grant to the use of all streets and avenues in Gordon Heights. Since their right of use is to all streets *289 and avenues, it is also to the whole of every street and avenue as shown on the plot F-16-601. The express grant of the right to the use of a street carries with it the right to the use of the whole of the street. Brooks v. Voight, supra.
Since plaintiffs by express grant have a right "of way, use and privilege" of all streets and avenues in Gordon Heights, which streets and avenues were specifically designated on the plot F-16-601, such right may not be interfered with by defendant. Plaintiffs are, therefore, entitled to an injunction restraining defendant from such interference and requiring removal of obstructions which defendant has erected. In view of this holding it is unnecessary to consider plaintiffs' contention that the parcel of land in dispute has been dedicated to public use and accepted by public authority.
Plaintiffs' motion for summary judgment is granted. Defendant's motion for summary judgment is denied. Order on notice.
NOTES
[1] While defendant makes some comment which indicates its construction as placing the area in dispute as within the exception. I cannot believe that it seriously presses this view. The streets excepted were obviously those shown upon the plot which lay within the area which was, as stated, southeast of River Road and northeast of Lore Avenue.