MICHAEL DONNELLAN, PLAINTIFF-APPELLANT, v. VAN R. HALSEY, CHARLES D. HALSEY, GERALD V. HOLLINS, SHIRLEY P. AUSTIN, GEORGE W. LESLIE, JAMES S. AUSTIN, ALLEN W. AMES, PHILIP A. S. FRANKLIN, JR., AND JAMES MITCHELL, PARTNERS, TRADING AS C. D. HALSEY & COMPANY, DEFENDANTS-RESPONDENTS.

Submitted October 26, 1934—Decided January 10, 1935.

176

For the appellant, *Richard Doherty.*

For the respondents, *Applegate, Stevens, Foster & Reussille (John Milton,* of counsel).

The opinion of the court was delivered by

PERSKIE, J.    This is a suit by an employe against his employers for services rendered based on a claim for a percentage of profits.    The gravamen of the complaint is set forth in paragraph 2 thereof.    It is as follows:

"January 1st, 1927, and hitherto, the plaintiff was employed by the defendants as general manager of their business and their main office located at the city of New York, county and State of New York, upon the terms, relating to his compensation, that he would be paid for such service a salary of $7,000 per year and a commission and percentage of the profits of the said partnership, as earned through the plaintiff's management of said New York office, at the rate of three per cent. of said profits, payable respectively on the 30th day of June and the 31st day of December, in each year."

Among the several defenses filed by the respondent, in addition to the denial thereof, it was alleged (first separate defense) in substance, that the employment on January 1st, 1927, was for an indefinite period of time and that it was verbally agreed that respondents would pay appellant at the rate of $7,000 a year plus one and one-half per cent. of the

net profits of respondents' business earned during the period of appellants' employment; that the contract of employment was made in the city of New York and therefore governed by the laws of the State of New York; that the contract was wholly performed until the partnership was dissolved, at or about March 1st, 1929; that, in effect (second separate defense) on July 1st, 1929, the respondents again employed appellant under the same terms set out under the first separate defense, except that the rate of the net profit was reduced to three-quarters of one per cent.; that this contract was also wholly performed on their part until the same was terminated by the appellant in July of 1932.

The proofs adduced disclosed that respondents' firm (a partnership) was engaged in the business of stock brokers. That appellant was first employed in 1896 by the then respondent firm as a runner. He was advanced from time to time and in 1922 was employed as a general manager. His compensation was then fixed at a definite sum plus three per cent. of the net profits; this arrangement continued until it was changed in 1927 and 1929, as more fully detailed, under the first and second separate defenses, by the respondents.

The personnel of the firm changed several times during the period that appellant worked for respondents. Van R. Halsey succeeded his father, Charles D. Halsey, as head of the firm and was the spokesman for his co-partners. Thus, it appears that late in 1926, Halsey talked with appellant (referred to in the testimony as "Matt") and said: "Matt, my partners are making a kick because you are getting nearly as much as they are. My brother Charlie and Leslie claim they have got their money in the firm and that you are getting nearly as much out of it on your three per cent. interest as they are, and I am going to cut your percentage to one and half per cent." Appellant complained that it was unfair, but Halsey replied: "Well, I am going to cut it to one and half. When I can fix it up with my brother Charlie and Leslie, I will see that you get it back." The court then said, "you accepted that proposition, did you?" and the witness

replied, "with the provisions that I was to get it back when he fixed up with his brother Charlie and Leslie, his partner." The court then asked, "then you accepted the proposition of one and a half per cent. for how long?" and the witness replied, "that was until 1929."

Mr. Halsey testified that at the close of the conversation between the plaintiff and himself, with relation to the first reduction in percentage, the plaintiff said to him, "well, if you are going to do it, that is all I can do about it," and Halsey replied, "I guess that is so."

As to the second reduction, the plaintiff testified that Halsey "told me that his partners are of the opinion not to give me any percentage at all. They were dissatisfied with me." The plaintiff further testified "even when in 1927, you cut me to one and a half per cent., you were going to get it back for me," and that Halsey replied, "I can't help it. They are all kicking now. I am going to cut this to three-quarters of one per cent.," and the witness testified that he received this three-quarters of one per cent., and when the court asked for how long, the witness replied, "from 1929 up to 1932, July, whatever time there was any profits in the firm, I think it was in 1930."

Appellant continued with respondents until he brought suit in July of 1932 for the difference between the three per cent. of the net profits and the percentage actually received, totaling in excess of $50,000.

The learned trial judge, as already stated, directed a verdict of no cause of action. Appellant challenges the propriety of that disposition of the cause and assigns the following reasons: (1) The trial judge erred in granting the motion of the defendants for the direction of a verdict in their favor. (2) The trial judge erred in ruling that there was conclusive evidence that the plaintiff had accepted the modification of the contract of employment sued upon. (3) The trial judge erred in ruling that there was no conflict of evidence on the question of whether the plaintiff accepted a modification of the contract. (4) The trial judge erred in ruling that there was no evidence from which it was legitimately inferable

that plaintiff did not accept a modification of the contract sued upon.

The question, therefore, requiring decision by this court is a rather narrow and limited one, namely: was the contract of hiring of such a character as to permit a termination thereof at the will of either party? The contract of employment was general and indefinite; it contained no provision respecting the length of the employment.

In our state, this court, in *Willis* v. *Willys Corp.*, 98 *N. J. L.* 180 (at *p.* 181), through Mr. Justice Parker, said:

"There is a great diversity of view in the different jurisdictions respecting this class of cases. The 'English view,' so called, tends to a construction establishing a contract for a definite term if this can be spelled out of the language used. The 'American view,' favored by most of the states, tends toward a holding that the hiring is at will unless the contrary be fairly plain. 26 *Cyc.* 973, *et seq.; Willis Con.*, § 39. Our own cases seem to favor the English view." (See, also, cases therein cited.)

The contract in the instant case was, however, made under and in pursuance of the laws of the State of New York; it is therefore governed by the laws of that state. It appears to be the settled law of that state that unless a definite period of service is specified in the contract the hiring is at will and the master has the right to discharge and the servant to leave, at any time. See *Martin* v. *The New York Life Insurance Co.*, 148 *N. Y.* 117; *Watson* v. *Gugino*, 204 *Id.* 535; *Arentz* v. *Morse Dry Dock and Repair Co.*, 249 *Id.* 439.

Thus, if the relationship existing between the parties was based on a contract, such as is involved herein, terminable at the will of each party, it necessarily follows that it was subject to modification at any time as a condition of its continuance. The contract was modified in 1927 and 1929 and as modified was accepted by appellant. And as accepted by appellant was fully performed by the respondents.

We have examined all of the points raised in the brief of counsel for appellant and we are of the opinion that they do not require further discussion; they are without merit or

substance. We are firmly of the opinion that appellant was nothing more, or less, than an employe who had an indefinite contract of hiring, as to time, with the respondents. The contract was terminable at will; it was, therefore, subject to modification. As modified the provisions of the contract and, particularly the basis of payment therein provided, were accepted by appellant. Respondents fully performed their undertaking. There was nothing due appellant. There was, therefore, nothing to submit to the jury; the learned trial judge properly directed a verdict of no cause of action against the appellant and in favor of the respondents.

Judgment is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.