HARRY WOLF,

*vs.*

GLOBE LIQUOR COMPANY, a Delaware corporation.

*New Castle, April 13, 1953.*

*William Prickett*, of Wilmington, for plaintiff.

*H. Albert Young*, of Wilmington, for defendant.

BRAMHALL, Vice-Chancellor: In July of 1937, defendant was a corporation engaged in the wholesale liquor business in the City of Wilmington. Its stock was owned solely by one Morton Lazarus. Plaintiff and Lazarus, on behalf of defendant corporation, entered into a contract, terminable by either party on thirty days notice, under the terms of which defendant employed plaintiff as manager of its business at a salary of $75 per week. It was further agreed between the parties that plaintiff was to receive 25% of the net profits until such time as Lazarus was reimbursed in the sum of $30,000 at which time plaintiff was to receive 50% of the net profits of the business. A memorandum of the engagement was set forth in the minutes of defendant dated July 14, 1937, as follows:

"Mr. Lazarus then called the attention of the meeting to the fact that he had, on behalf of the corporation, entered into an agreement with Harry Wolf for his services as Manager of the business conducted by this company, and that Harry Wolf had agreed to enter into the employment of this company at a salary of Seventy-five Dollars ($75.00) per week, and a further agreement on the part of this company to pay to him twenty-five per cent (25%) of the net profits until such time as Mr. Lazarus is reimbursed by the company for the sum of Thirty Thousand Dollars ($30,000.00) which he has advanced and expended on behalf of this company and that thereafter, viz. after the Thirty Thousand Dollars ($30,-000.00) has been repaid to Mr. Lazarus, that in addition to the salary of Seventy-five Dollars ($75.00) per week Mr. Wolf is to receive Fifty per cent (50%) of the net profits and further that it was understood between Mr. Wolf and Mr. Lazarus that the Agreement of Employment could be terminated upon the giving of thirty (30) days' written notice by either party."

Plaintiff became president and a director of defendant. At first, the business was not profitable. It was not until the year 1940 that defendant had any substantial profits. The profits increased substantially after 1940 until 1944, when plaintiff ascertained that the earnings of defendant amounted to more than $30,000. Upon taking this up with Lazarus, on behalf of defendant, and with the accountants of defendant, it was agreed that although Lazarus had not actually withdrawn the sum of $30,000 from the company and did not contemplate doing so, plaintiff was entitled to a commission of 50%, instead of 25%, of the net profits.

In 1940 defendant employed new accountants, Mack & Company, Mr. Mack testified that when he read the minutes of 1937 relative to the agreement between plaintiff and defendant he found that the words "net profits", as set forth in the minutes, were meaningless to him. He thereupon met with plaintiff and Lazarus and informed them that the words "net profits" could have many meanings and that they would have to reach an understanding between them as to how these words should be interpreted; that both plaintiff and Lazarus instructed Mack that they wanted something simple so that each could understand clearly the formula for the determination of net profits; that Mack then discussed with them a method providing for the payment of commissions or bonus on the basis of "bonus after would be taxes after bonus" and demonstrated this method to them; that both plaintiff and Lazarus, on behalf of defendant, accepted this method or formula as the basis for figuring net profits.

This method provided for the computation of plaintiff's bonus by deducting as an expense the bonus and taxes. Plaintiff therefore received considerably less than what he would have received had he been paid a percentage of the actual profits, as he contended he was entitled to receive.

Mack's testimony in this respect is corroborated by the testimony of Lazarus, but plaintiff specifically denied that Mack explained or illustrated this formula or method of computation at that meeting or that any such method of computation was ever agreed upon.

From the time when plaintiff was first paid a bonus in 1940 until he left the employ of defendant on December 31, 1947, it is undisputed that plaintiff's bonus was figured in accordance with the formula or method which Mack testified that he explained to plaintiff and Lazarus at the meeting in 1940, at the beginning of the employment of his firm as accountants for the company.

Plaintiff testified that the net profits were to be divided on the basis of profits after taxes and that when defendant "received a dollar" plaintiff should also "receive a dollar". He further testified that he did not realize that he was not being paid his percentage of the net profits in this manner until May or June of 1944, upon examining the tax return of defendant for the year 1943; that at that time he discussed with Mr. Mack and Mr. Lazarus the question of why he was not receiving the same amount as bonus as the defendant received in earnings; that he was informed by Lazarus that the matter would be adjusted so that he would receive in bonus the same amount as the defendant received in earnings; that plaintiff requested that his bonus be figured on the basis of 50% before taxes, which was done but which was not approved by defendant; that he withheld taking any action because of the promise of Lazarus that plaintiff would receive an equal share of the profits and because he had a good job and was making money.

Lazarus denied that plaintiff claimed that he was entitled to a "fifty-fifty split" or that he ever stated to plaintiff that the matter would be adjusted so that plaintiff would receive the same amount as defendant, although he admitted that at one time he did state to plaintiff, "I will take care of you in some way."

The witness Haggerty, an expert accountant associated with Mack & Company, testified that he went over with plaintiff the 1943 financial statement of defendant as well as plaintiff's bonus payment; that he showed plaintiff a rough draft report, giving the computation of his bonus and explained the book profits less tentative tax, showing the net profits of defendant and what plaintiff's bonus was; that he then went over with plaintiff the bonus aspects of the financial report; that plaintiff at no time made any objection to the method of calculation. Haggerty

further testified that during the years 1944 and 1945 plaintiff frequently discussed with the witness the question of whether or not he could be paid his bonus before taxes and the cost to defendant of figuring plaintiff's bonus in that manner; that plaintiff never stated in any of these conversations, although the witness saw plaintiff frequently in those years, that the method of the computation of plaintiff's bonus in the previous years was incorrect or that plaintiff was entitled to "bonus after actual taxes"; that at the request of plaintiff, and not Lazarus, he prepared a calculation showing the amount of plaintiff's bonus computed on the basis of "bonus before taxes" and later made a calculation based upon a "fifty-fifty split" and gave these reports to plaintiff; that it was not until March or April of 1946, at a meeting between plaintiff and plaintiff's expert accountant with Lazarus, Mack and the witness, that he heard plaintiff contend that the calculation of his bonus had been incorrect; that at that time plaintiff contended that he was entitled to share equally with defendant in the profits. The witness testified that a short time prior to June 20, 1946, at the request of Lazarus, he prepared an amended tax return and claim for refund, to be submitted to counsel for defendant for their approval; that the witness advised against this procedure, and his action in that respect was later approved by defendant's counsel; that Lazarus' position throughout all these discussions was that Wolfe was being paid in accordance with the agreement between plaintiff and defendant, but that, if there should be an opportunity for plaintiff to obtain additional compensation at little or no expense to the company, Lazarus was willing to try to satisfy plaintiff.

Plaintiff's original salary was $75 per week. In 1939 his salary was increased to $100 per week; in 1941 to $175 per week; and sometime later to $200 per week. In addition, plaintiff also received in 1940 a salary bonus of $6,000, and in each of the years 1945 and 1946, a salary bonus of $3,000.

The testimony offered on behalf of plaintiff and that offered on behalf of defendant is conflicting. Plaintiff denied almost in its entirety the testimony of the witness Mack relative to the meeting between plaintiff, Lazarus and Mack, in 1940. Although

Mack's testimony is corroborated by Lazarus and although all subsequent computations of plaintiff's bonus were figured in accordance with the formula which Mack testified that he explained at that meeting, I am not certain, assuming Mack's testimony to be correct, that either plaintiff or Lazarus fully understood any computations which Mack may have made at that time. However, since the words "net profits" as they appear in the minutes of 1937 are not explained, it certainly was the duty of an accountant when he first undertook to prepare the tax returns of defendant to arrive at a definite understanding of what the parties intended that term to mean. Certainly a meeting between the accountant and the parties involved was a most natural manner of endeavoring to arrive at the intent of the parties as to the distribution of net profits. I am convinced, first, that the meeting occurred, and secondly, that the question of the manner in which net profits should be computed was discussed by the parties. I am uncertain as to whether a clear understanding between the parties was reached at that time.

Plaintiff's testimony to the effect that prior to sometime in 1944 he was ignorant of the fact that he was not receiving what he claimed to be his share of the net profits and his explanation for continuing in the employ of defendant from 1944 until December 31, 1947, are not persuasive. He was president and a director of defendant. He signed the tax returns prepared by the accountants. The books and records of defendant were at his disposal at all times. There is a considerable difference between the amount of plaintiff's bonus as it was actually figured and the amount plaintiff would have received had it been figured in accordance with plaintiff's contention. Plaintiff was familiar with the amount of tax paid by defendant, and, of course, knew the amount he received as bonus. While it might have been difficult for him to determine from the figures of which he had knowledge the exact amount due him at any given time, he must have known that he was not receiving in bonus the percentage of profits which he claimed to be due him. Plaintiff testified at the trial for several days. Some of his testimony related to formulae and methods of accountants. Based upon plaintiff's demeanor on the witness stand, I must conclude that he was competent at least to understand that he

was receiving as bonus considerably less than his proportionate share of the profits had they been figured in accordance with plaintiff's contention. Unquestionably, plaintiff was dissatisfied. Unquestionably, defendant, through Lazarus, was endeavoring to satisfy him. Plaintiff was given several increases in salary. On several occasions he was given substantial salary bonuses. They were not provided for in the original agreement. The acceptance of the several increases in salary and the several salary bonuses and the continuance by plaintiff in the employ of defendant after knowledge of the method in which his bonus was computed all indicate strongly that, while plaintiff may not have been satisfied, he accepted his bonus in the manner computed by defendant.

The agreement of 1937, as evidenced by the minutes of defendant, is silent as to the meaning of the words "net profits". While admitting that to that extent the agreement is ambiguous, plaintiff contends that there are only two interpretations which can be given to these words: (1) net profit after taxes and before bonus; and, (2) net profit after bonus after taxes. Plaintiff further contends that since the minutes in question were prepared by counsel for defendant any ambiguity in these minutes must be interpreted in the manner most favorable to plaintiff. He further asserts that the words "net profits" cannot possibly under any circumstances be interpreted as meaning profits after bonus and would-be or tentative taxes.

Defendant contends that the words "net profits" as used in this agreement may have many interpretations and that since the words are ambiguous the conduct of the parties indicating the interpretation which they themselves have placed upon the contract is pertinent and significant. Defendant avers that the parties reached a definite understanding in 1940 as to the meaning which should be given to the words "net profits." Defendant also contends that even if defendant had not compiled with the terms of the agreement between the parties in the manner of the payment of plaintiff's bonus, plaintiff, when he accepted the bonus in the manner computed up until the time of the termination of the agreement, elected to continue with the contract as interpreted or modified by defendant, instead of repudiating the agreement,

and cannot now present his claim for bonus under the original agreement as interpreted by plaintiff. Defendant also raised the defenses of laches and accord and satisfaction.

■ I shall consider first the question of whether or not plaintiff by accepting for several years payments of his bonus as computed by defendant's accountants elected to continue with the contract as interpreted or modified by defendant. I have concluded that the weight of the evidence does not sustain plaintiff's contention that he continuously objected to the payment of his bonus in the manner in which it was paid to him by defendant, that he demanded payment of his bonus in accordance with his interpretation of the meaning of "net profits" and that he only remained in defendant's employ upon defendant's promise that he would be paid in full in accordance with his contention. Regardless of whether or not I accept the evidence submitted on behalf of plaintiff or that submitted for defendant, plaintiff is faced with the fact that for several years after he learned of the manner in which his bonus was computed he continued in the employ of the defendant, accepting payment of his bonus in accordance with defendant's interpretation of the agreement and also accepting several very substantial raises in salary and several salary bonuses.

■■ When plaintiff learned that he was not being paid in accordance with the agreement, it was his duty to rescind the contract or continue therewith and accept the payments as figured by defendant. He was put to an election whether to accept the bonus as figured by defendant, and thereby signify his consent to defendant's interpretation or modification of the agreement, or to reject the bonus and terminate the contract. With knowledge of the facts he chose to accept the bonus as computed by defendant, making no objection other than to express his dissatisfaction and his desire that his bonus be substantially increased in some manner which would be at small cost to defendant. Having chosen to continue in the employment of defendant and having accepted the various substantial raises in salary and salary bonuses given him during that period of time, he cannot now claim his other remedy of repudiating the contract, since that remedy is inconsistent with performance of the contract. *Ingwersen Mfg. Co.*,

*Inc. v. Maddocks,* 118 *Colo.* 281, 195 *P.2d* 730; *Pollack v. Carlye Dress Corp.,* (*D.C.E.D.Mo.E.D.*1948), 76 *F.Supp.* 755; *Southern Savings Bank v. Dickey,* 58 *Ga.App.* 718, 199 *S.E.* 546; *Frank v. Wilson & Co., Inc.,* 27 *Del.Ch.* 292, 32 *A.2d* 277; *Donnellan v. Halsey,* 114 *N.J.L.* 175, 176 *A.* 176. See *Williston on Contracts (Revised Ed.), Vol.* 3, § 683, *p.* 1969.

The case of *Donnellan v. Halsey, supra,* is somewhat similar to the present case. In that case plaintiff's percentage of bonus was cut twice by employer. Plaintiff objected the first time his bonus was cut and was told by one of defendants that plaintiff would "get the cut back". Plaintiff continued his employment. Later plaintiff received another reduction, to which he objected. However, plaintiff remained in the employment of defendant for a period of approximately three years after the second cut. The court held that the contract was modified by defendants and refused to permit plaintiff to recover under the original agreement.

I conclude that plaintiff made his election to continue his employment with defendant under the contract as interpreted by defendant and that he cannot now sue defendant for any breach, if there was a breach, of the original contract.

Having determined the question of plaintiff's acceptance of the contract as interpreted by defendant, it will be unnecessary for me to comment upon the other defenses raised by defendant.

An order will be signed on notice in accordance with this opinion.