Harry Wolf,

*Plaintiff Below,*
*Appellant,*

*vs.*

Globe Liquor Company, a Delaware corporation,
*Defendant Below,*
*Appellee.*

*Supreme Court, On Appeal, March 25, 1954.*

Before SOUTHERLAND, C. J., and WOLCOTT and TUNNELL, JJ.

*William Prickett,* Wilmington, for appellant.

*H. Albert Young,* Wilmington, for appellee.

WOLCOTT, Justice, for the Court: This appeal involves the question of the right of a former employee to demand an accounting from his employer of additional profits in past years, to a percentage of which the employee contends he was entitled pursuant to the terms of his employment agreement. The facts of the case are as follows:

Globe Liquor Company, the appellee (hereinafter called Globe), is a Delaware corporation engaged in the wholesale liquor business. Some time in 1937, Morton Lazarus acquired all of its outstanding stock and, in July of that year, in Globe's behalf, entered into an employment agreement with Harry Wolf, the appellant. This agreement is evidenced by a minute of action taken at a meeting of Globe's directors on July 14, 1937. Under its terms, Wolf was hired as general manager of Globe at a salary of $75 per week and additional compensation as a bonus of 25% of the "net profits" of Globe until such time as Lazarus was reimbursed by Globe the sum of $30,000, upon which event Wolf's bonus was to be 50% of the "net profits". Either Globe or Wolf could terminate the agreement by giving 30 days' written notice.

Wolf was elected a director and president of Globe and managed its operations. From 1937 through 1939, the operations were non-profitable. Commencing with 1940 substantial earnings were made by Globe and Wolf was paid 25% of the "net profits" until 1944 when he ascertained that more than $30,000 had been accumulated by Globe from earnings and, by agreement with Lazarus, that fact was considered to be reimbursement of Lazarus. Thereafter, Wolf's bonus was computed at the rate of 50%.

In 1940 Globe retained an accountant. At a meeting between the accountant, Lazarus and Wolf, the question of the meaning of the

phrase "net profits" used in the employment agreement was raised by the accountant. He proposed to compute Wolf's bonus upon a basis of "bonus after would-be taxes". This method was suggested as a simple method of computing the bonus which would not involve the use of an algebraic formula, or a trial and error computation. Thereafter, Wolf's bonuses were computed and paid upon this basis. However, the tax returns filed by Globe set up Wolf's bonus payments as a deduction thus reducing the actual tax paid by Globe from the amount of "would-be tax" used in computing the bonus. The result was to increase the amount of profit retained by Globe. Throughout the period of employment Wolf received a total of $91,635.16 as bonus payments. In 1947 Globe operated at a loss and Wolf terminated the employment agreement as of December 31, 1947.

Throughout the period of his employment, Wolf received raises in his salary and other compensation. Thus, his salary was increased in 1939 to $100 per week; and in 1941 to $175 per week, and, finally, was increased to $200 per week. In addition, Wolf was paid a so-called salary bonus in 1940 of $6,000 and in each of the years 1945 and 1946, a salary bonus of $3,000. The so-called salary bonuses were in addition to the bonuses paid Wolf pursuant to the employment agreement of 1937.

Commencing some time about the middle of the period of his employment, Wolf became dissatisfied with the amount of his compensation and complained to Lazarus. Various expedients were proposed to Wolf to increase his compensation. These were designed to do so at little more expense to Globe. However, these suggestions did not bear fruit in a formal agreement. In spite of Wolf's apparent dissatisfaction, his bonus continued to be paid and accepted by him in accordance with the formula first suggested by Globe's accountant in 1940.

After the termination of the employment agreement by Wolf in December, 1947, he instituted this action for an accounting by Globe of additional amounts he claims due him as a bonus. Wolf claims that the 1940 formula for the computation of bonus used by the accountant is wrong. He contends that the phrase "net profits" used in the minute evidencing the agreement is ambiguous, but subject to only

two possible interpretations, viz., (1) profits after taxes and before bonus, and (2) profits after bonus after taxes. Since, Wolf argues, the language of the minute evidencing the agreement was selected by counsel for Globe, any ambiguity in that language must be resolved in the manner most favorable to Wolf, and that, therefore, his bonus throughout his period of employment should have been computed on the basis of profits after taxes and before bonus. In any event, Wolf argues that, under no circumstances, can the phrase "net profits" be interpreted as meaning profits after tentative taxes, as suggested by Globe's accountant in 1940.

If Wolf is correct in his contention, a recomputation of the bonus due him for the period 1940-1946 would show a total bonus payable to Wolf of $158,610.84, or an additional amount over what he has admittedly received of $66,975.68.[1]

Globe contends that the inherent ambiguity in the phrase "net profits" has been resolved by the parties' adoption of the method of computation suggested by Globe's accountant in 1940. Other defenses raised by Globe are that the 1940 conference with the accountant resulted in a definite understanding between the parties as to the method of computing Wolf's bonuses; that the acceptance by Wolf of bonuses computed in accordance with the 1940 formula was in effect an election by him to treat the 1937 agreement as so providing; and that Wolf's action is barred by laches and an accord and satisfaction.

The Vice Chancellor dismissed Wolf's complaint, holding that Wolf had elected to continue his employment with Globe under the agreement as interpreted by Globe's accountant, and that he was, accordingly, prevented from suing Globe for any supposed breach of it, 33 *Del.Ch.* 487, 96 *A.2d* 236. The Vice Chancellor did not rule upon the other defenses of Globe.

From the order dismissing the complaint, Wolf has appealed, attacking the holding of the Vice Chancellor that he had elected to

1. This amount includes the sum of $8,465.88 representing 50% of a refund of excess profits tax resulting from a carry-back of Globe's 1947 net operating loss to the year 1945. The subject of the carry-back will receive more extended consideration later on in this opinion.

accept the contract as interpreted by Globe. The argument of Wolf in this respect is that the Vice Chancellor erroneously applied the doctrine of election of inconsistent remedies to these circumstances, and that that doctrine has no application under these circumstances. It is true that, isolating some of the language of the opinion below, it might be argued that the decision rested upon an application of the doctrine, but analysis of the opinion and the factual findings of the Vice Chancellor indicate strongly that in reality what the Vice Chancellor did was to dismiss Wolf's complaint because he was equitably estopped to maintain it.

An equitable estoppel arises whenever a party, by his voluntary conduct, has either deliberately or unconsciously led another party in reliance upon that conduct to change his position for the worse. 3 *Pom., Eq.Jur.* (*5th Ed.*) § 804; 19 *Am.Jur., Estoppel,* § 40; 31 *C.J.S., Estoppel,* § 108a; *Lewis v. Coxe,* 5 *Har.* 401; *Marvel v. Ortlip,* 3 *Del.Ch.* 9; *Jones v. Savin,* 6 *Boyce* 68, 96 *A.* 756; *Graham v. National Bank of Smyrna,* 2 *W.W.Harr.* 264, 122 *A.* 85. Whenever the other party, relying upon that conduct changes his position to his detriment, or puts himself in a position which cannot be undone without substantial expense, the person whose conduct has brought the situation about will be estopped from asserting his legal rights against the party so misled. 3 *Pom., Eq.Jur.,* (*5th Ed.*) § 805. Particularly is this true as between parties who have long acquiesced in settlements of accounts or other mutual dealings. 3 *Pom., Eq.Jur.* (*5th Ed.*) § 820.

Do the facts of Wolf's acceptance of his bonus computed in accordance with the 1940 formula, and his continuance in Globe's employ, estop him from now claiming bonuses computed by a different formula, assuming the formula so proposed is the correct one called for by the 1937 agreement? It is admitted by both sides that the phrase "net profits" in the 1937 agreement, is ambiguous and that, therefore, when Globe began to make a profit in 1940 it was necessary to have the phrase defined in order to pay Wolf what was due him. A meeting was held with Globe's accountant at which the accountant proposed the formula actually used thereafter. Wolf says that he

did not understand the accountant's formula, but it is undisputed that, thereafter, his bonus was computed in accordance with it.

Wolf at all times during his employment was president, a director and general manager of Globe. As such, the books and records of the company were at his disposal and inspection. He signed the tax returns of Globe and thus knew the amounts of tax Globe was paying and the various deductions used to arrive at the tax figure. He knew the amounts he was receiving as a bonus and he must have known he was not receiving as a bonus the amounts he now claims were due him. Significantly, the Vice Chancellor finds the fact to be that he was competent to understand that he was actually receiving as a bonus considerably less than he would have received had his bonus been computed in accordance with his present contention.

It is true that in 1945 and 1946 Wolf was dissatisfied with the amount of his compensation, and that Lazarus was apparently willing to satisfy him, if that could be accomplished without undue expense to Globe. But the efforts of Lazarus in this respect were directed toward increasing Wolf's compensation at the expense of the United States tax collections rather than by the diminishing of Globe's net earnings.

It is undisputed that at least as early as 1944 Wolf had direct knowledge that he was not receiving as a bonus an amount equal to what Globe was retaining as profit, although his present contention is that that is what he was entitled to. For at least three years after admittedly knowing this, however, he joined in the filing of Globe's tax returns, even though the returns showed a deduction of his bonus computed in accordance with the 1940 formula as a business expense.

In 1946 Wolf began to press his claim for a recomputation of his past bonuses in accordance with the formula he now urges upon us. Lazarus was apparently willing to accommodate him, if it would be done at the expense of federal tax collections rather than at Globe's profits. As a matter of fact, at Wolf's insistence, Globe's accountant prepared claims for tax refund for the years 1943, 1944 and 1945 reflecting the additional amounts demanded by Wolf as bonus, and charging those amounts as business expenses, thus reducing Globe's

tax liability for those years. However, Globe's accountant and its tax consultants strenuously advised against any attempt to claim refunds for such a purpose on the ground that the right to do so was doubtful and that the net result might well be assessment of additional tax liability upon Globe.

Despite the demands of Wolf in 1946 for a larger share in the profits by way of bonus, he, nevertheless, as president executed Globe's 1946 tax return which deducted as a business expense his 1946 bonus computed in accordance with the 1940 formula. He thus joined in putting Globe in the same position with respect to 1946 as it was in with respect to 1943, 1944 and 1945.

■ The situation, therefore, is that Wolf, by his acceptance of his bonuses and execution of Globe's tax returns, assisted in putting Globe in a position that prevents it from complying with his present demands except at substantial expense to itself. That this is so becomes obvious when it is realized that if Globe pays Wolf in accordance with his present demand its only means of recoupment of that payment is by claims for tax refunds, the collection of which is at best doubtful, and, even if successfully maintained, would be accompanied with the expense of prosecution. Under these circumstances, we think the doctrine of equitable estoppel should be applied, even though Wolf may be correct in his contention that the 1937 employment agreement means what he now claims it means.

■ While the Vice Chancellor spoke in the language of a duty imposed upon Wolf to make an election between inconsistent positions, analysis of his opinion indicates clearly that in reality he was relying upon the doctrine of equitable estoppel. Thus, he finds that the weight of the evidence does not support Wolf's contention that throughout he objected to the method of computing his bonus and that he demanded payment in accordance with his present contention. His contention that he remained in Globe's employ solely upon its promise that he would be paid in full is specifically resolved against him. Relying upon the facts that Wolf accepted his bonus and remained in Globe's employ after he learned of the manner in which it was computed, and the fact that he accepted salary raises and salary bonuses, the Vice

Chancellor concluded that Wolf had in effect decided to accept Globe's interpretation of the 1937 employment agreement. Having so concluded, he dismissed the complaint. We think we would be remiss in ignoring these findings, fully supported by the record, which led the Vice Chancellor to his conclusion. Whether it was artistically expressed or not, the Vice Chancellor dismissed the complaint because Wolf was estopped to assert it.

One other point urged by Wolf remains to be noticed. It was not specifically passed upon by the Vice Chancellor. In order, however, to bring this litigation to an end, we will dispose of it. This contention is that Globe, pursuant to the Internal Revenue Code, was entitled to carry a substantial 1947 operating loss back, within a limited period, to a year in which it had showed a profit and to re-adjust its tax for that year. Globe did just this and carried back its 1947 loss to the year 1945, resulting in a refund to Globe of approximately $17,000, of which Wolf claims to be entitled to half, even under the method of computation urged by Globe, on the theory that it represents an increase of net profits for 1945.

We think Wolf's argument in this respect loses sight of an important consideration, viz., that Wolf accepted his bonus under the theory of computation suggested by Globe's accountant in 1940, and that that theory was that the bonus should be computed by taking into account estimated taxes payable for the year in which the bonus was due. We have held that the parties operated throughout under this conception of the meaning of the 1937 contract. This being so, we are of the opinion that Wolf's bonus rights were to be finally determined at the end of each year, and were not to be written up or down as a result of future tax adjustments.

This conclusion is strengthened by the fact that in almost every year during the period in question, Globe was subjected to deficiency assessments by the tax authorities and paid additional tax for those years. There is no showing that after deficiency tax assessments were placed upon Globe, Wolf's bonus was re-computed in the light of the additional tax paid. Obviously, of course, had this been done, Wolf's bonus would have been correspondingly reduced. However, Globe made no demand for such a re-adjustment, nor did Wolf make an

offer to re-adjust. We think, therefore, that the re-adjustment of the 1945 tax and a refund of a portion of it to Globe as a result of its operating loss of 1947 has no bearing whatsoever upon the computation of a bonus payable to Wolf for the year 1945.

For these reasons, we hold that Wolf is not entitled to any additional bonus payment as a result of the refund paid Globe due to the carry-back of its 1947 loss to 1945.

For the foregoing reasons, the judgment of the Vice Chancellor dismissing the complaint is affirmed. It is unnecessary for us to consider the other defenses raised by Globe.