**Ralph GREEN and William L. Groesbeck, doing business as Ralph Green and W. L. Groesbeck, Appellants,**

**v.**

**Harry F. DINGMAN, Appellee.**

**No. 15487.**

United States Court of Appeals Eighth Circuit.

June 14, 1956.

548

Tyler B. Gaines, Omaha, Neb. (Gaines, Spittler & Gaines, and Joseph R. Moore, Omaha, Neb., on the brief), for appellants.

Guy C. Chambers, Lincoln, Neb. (Chambers, Holland, Groth, Dudgeon & Hastings, Lincoln, Neb., on the brief), for appellee.

Before GARDNER, Chief Judge, and JOHNSEN and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This action arises out of an employment contract, and this appeal by Green and Groesbeck, defendants below and hereinafter so designated, is from a judgment by the District Court awarding plaintiff, Dingman, 50 per cent of the profits on the original Lincoln Air Base contract, disallowing in the accounting certain expenses charged by defendants to various jobs, and allowing plaintiff damages for breach of an option contract.

This case was tried to the court without a jury. Jurisdiction has been established, based upon diversity of citizenship and a controversy adequate in amount.

Defendants are a partnership engaged in highway and airport construction work in a number of states including Nebraska.

549

Dingman, who had previous contracting and construction experience, early in 1947 entered into negotiations with the defendants, which resulted in his employment as supervisor of certain types of defendants' contracting work in Nebraska. All parties agree that plaintiff was to receive a salary of $90 per week, which has been paid and is not in dispute. All agree that plaintiff was to participate in the profits or losses arising out of the work he supervised. Plaintiff claims that the agreement was that he was to share in profits or losses to the extent of 50 per cent upon all work he was authorized to supervise except oil jobs, as to which his participation was to be 25 per cent. Defendants contend that the agreement contemplated that plaintiff's participation in profits and losses was to be 50 per cent on concrete work and 25 per cent on all other types of work. The issue of the percentage of participation arises only in connection with the Lincoln Air Base contract in 1952. The parties agree that while there was a small amount of concrete work and a modest amount of oil work on the Lincoln Air Base project, the job could not be properly classified as either oil or concrete.

The evidence bearing upon the issue of plaintiff's participation in profits and losses is conflicting. Upon this issue the court found that plaintiff had established his contention that he was to have 50 per cent participation in profits and losses upon all work except oil jobs, stating:

"Upon this disputed issue the court accepts the version of Dingman, partly from its observation of the two principal witnesses and partly because it is more readily reconcilable with the major items of the other credible evidence."

■ Defendants state that the determination of the agreement of the parties at the time of plaintiff's employment presents a question of ultimate fact, and contend that the clearly erroneous rule does not apply to the determination of ultimate facts. In support of such contention defendants cite Galena Oaks Corporation v. Scofield, 5 Cir., 218 F.2d 217. As we read the last cited case, it merely holds that to the extent the court's determination of the ultimate facts is induced by an erroneous view of the law, the finding is not binding on the court, the court stating at page 219:

"* * * As succinctly stated by Professor Moore, 'Findings of fact that are induced by an erroneous view of the law are not binding. Nor are findings that combine both fact and law, when there is error as to the law.' 5 Moore's Federal Practice, 2d ed., Sec. 52.03(3), p. 2631. * * *"

This court has frequently laid down the standard for review in nonjury cases. A finding of fact of a trial court may not be set aside unless there is no substantial evidence to sustain it, unless it is against the clear weight of the evidence, or unless it was induced by an erroneous view of the law. Pendergrass v. New York Life Ins. Co., 8 Cir., 181 F.2d 136, 137; Meier & Pohlmann Furniture Co. v. Gibbons, 8 Cir., 233 F.2d 296.

■ A careful consideration of the evidence in the present case leads us to the conclusion that the finding of the trial court upon the participation issue is supported by substantial evidence and is not clearly erroneous.

Defendants in their brief urge that even if it be determined that under the original contract plaintiff was entitled to 50 per cent of the profits upon the original Air Base contract, such contract was terminable at the will of either party since the contract of employment was for an indefinite period. In this situation defendants contend that either party may modify the original employment contract without additional consideration as a condition to the continuance of the employment, and that defendants modified the employment contract by limiting plaintiff's participation in the Air Base contract to 25 per cent. This issue is not raised by the pleadings. In paragraph

V of plaintiff's amended complaint he states:

"That early in September, 1952, it was mutually agreed between the parties that upon plaintiff's completing work at the Air Base near Lincoln, Nebraska, plaintiff's employment should be terminated. That said work has been completed and under the terms of the agreement between the parties, defendants are indebted to plaintiff in the sum of $15,000. * * * "

In answer to this defendants state:

"With respect to Paragraph V of the Amended Complaint, these defendants admit that it was mutually agreed that plaintiff's employment would be terminated as set forth in the Amended Complaint; admit that the work at the Lincoln Air Base had been completed but deny that they are indebted to plaintiff in the amount of $15,000 as his share on said contract, and allege the fact to be that they are indebted to plaintiff in the amount of $5,878.69 as his bonus or share of profits accruing for the period from September 1, 1952, to the date of his termination of employment * * *."

Earlier in the petition plaintiff alleges the original contract of employment was entered into in 1947, and defendants in their answer admit the employment contract was made in 1947. Defendants in their brief do not point out the manner in which they contend they raised the modification issue in the trial court. The nearest approach is the following statement in defendants' brief, "At trial, defendants presented evidence to show that plaintiff was advised at the time of the contract for the Lincoln Air Base that the work was on a 25% basis, and that plaintiff continued to work on that basis."

[3, 4] We do not believe the modification issue was raised in the trial court either by pleadings or in any other manner adequate to call such issue to the trial court's attention. We are unable to find any indication in the trial court's exhaustive opinion which would disclose that the modification issue was presented to and considered by the court. This court has frequently stated that on appeal the appellant must adhere to the theory upon which the case was tried in the court below, and that the appellant can not seek reversal upon a different theory than that upon which he tried the case below. Weiss v. Duro Chrome Corp., 8 Cir., 207 F.2d 298, 300; Kirk v. St. Joseph Stock Yards Co., 8 Cir., 206 F.2d 283, 287, 40 A.L.R.2d 980; Petersen v. Chicago, Great Western Ry. Co., 8 Cir., 138 F.2d 304, 307, 149 A.L.R. 755.

Moreover, we fail to find that the evidence supports defendants' contention that the original contract was modified. The crucial discussion on this issue occurred at a conference in Des Moines between plaintiff and defendant Groesbeck. As to this conversation the plaintiff testified in part:

" * * * Then he told me that the Lincoln Air Base job was a 25% job and that was what the agreement had always been. * * * Then I said, 'How about finishing the Air Base Job?' and he said that I should. I said I was willing to do it but I expected my 50% on the job. There was some more discussion and I quit. Then I told him that I was going to make a deal with somebody else or start my own business, and would not do any more work with Green & Groesbeck, and he said I should not do anything that would interfere with the Lincoln job. I said I would not interfere and that I wanted to get the Lincoln job done as soon as possible. * * * "

Groesbeck testified:

" * * * I told Dingman there was a misunderstanding relative to percentage figures on the job, and he told me it should be a 50% job, and I told him I did not understand how he could think of a 50% deal on the Lincoln Air Base job. * * * Then he told me he thought he would

quit and I told him I thought that would be best. He agreed to finish the Lincoln Air Base job and reported to me on the progress they had made on it, which was satisfactory. * * *"

■ We find no substantial evidence which would warrant a finding that the parties intended any modification of their original contract, except to the extent that they agreed that all rights and obligations under the contract would terminate upon the completion of the original Lincoln Air Base job. The factual situation as to modification in this case is clearly distinguishable from that prevailing in the cases relied upon by the defendants, such as Wolf v. Globe Liquor Co., 33 Del.Ch. 487, 96 A.2d 236, Id., Del., 103 A.2d 774, and Weiss v. Duro Chrome Corp., supra. Here, the defendants wanted plaintiff to complete the pending work, and plaintiff was willing to do so. It is fair to conclude that the parties contemplated that the basis of participation in the work to be completed was that specified in the original contract. Our present record would not support a finding that the defendants issued an ultimatum to the plaintiff to accept 25 per cent participation or quit right then. In the event the modification issue was raised in the trial court, its finding that plaintiff was entitled to 50 per cent participation on the original Air Base contract is a finding for plaintiff upon such issue. Such finding has substantial evidentiary support and is not clearly erroneous.

■ Defendants further assert that the court erred in disallowing defendants certain expenses charged to jobs in which plaintiff participated. One disputed item involves equipment rentals. At the time plaintiff entered into the original contract he was advised by defendants that equipment rentals were charged upon a daily basis. Later, in defendants' accounting such rentals were charged upon a monthly basis. The court upheld plaintiff's contention that he was entitled to have the equipment rentals charged upon a daily basis, and this resulted in the elimination of rental overcharges amounting to $4,167.02.

Another transaction involved allowance of a $2,256.58 labor and material bill upon an oil distributor leased from Green Construction Co. The court found many new parts were installed on this machine which improved and modernized it, and further found that under the terms of the lease of this machine there was no obligation upon lessee to pay for this overhaul job.

Another transaction involved setting up fictitious job No. 262 which was classified as a 50 per cent participation job. The 1952 expense of maintaining concrete equipment that was idle during the year and depreciation upon such equipment were charged to job No. 262, the charges aggregating $6,384.72. The court eliminated job No. 262 and treated the charges to said job as general overhead which was allocated to the various jobs in proportion to direct job costs.

■ Defendants contend that under the employment contract the plaintiff was bound by defendants' method of bookkeeping and accounting, and that plaintiff lost any rights he might have had to object to the various practices by his failure to make objection at the time the transactions occurred. The trial court dealt with these contentions in detail in its memorandum opinion and disallowed a number of plaintiff's objections to defendants' accounting methods. Doubtless, as to the ordinary items, plaintiff was bound by defendants' method of accounting. However, the charges hereinabove enumerated which the court disallowed were unusual. The switch from daily to monthly charges upon equipment rentals, largely for items leased from people closely connected with the defendant partnership, was a drastic departure from the previous method which had been explained to the plaintiff at the time contractual relations were established. It has not been demonstrated that the trial court's conclusion that the lessee was not obligated to overhaul the oil distributor is erroneous. The charges of

maintenance and depreciation to a fictitious job resulted in placing 50 per cent of the burden as to such items upon the plaintiff, whereas his participation on some of the work was on only a 25 per cent basis. We are not convinced that the trial court's disallowance of the three types of expense items hereinabove discussed is clearly erroneous.

A considerable portion of heavy equipment used in the operation of plaintiff and defendants' business enterprises was leased equipment. The leases gave defendants an option to purchase the leased equipment and apply the rental paid upon the purchase price. In 1949 plaintiff complained that the rental payments reduced his share of the profits, and insisted that he was entitled to an interest in the property acquired by the exercise of the purchase options. It is agreed that as a result of such complaint plaintiff was given an option to acquire certain designated equipment having a cost price of $23,151.00. Defendants were to retain other equipment acquired through the options of substantially equal value. An authorized office memorandum was sent to the plaintiff confirming the option agreed upon and setting out its terms. Plaintiff, immediately after the termination of his employment, notified defendants of his election to exercise the option given him, which was rejected by the defendants. The trial court allowed plaintiff damages for breach of the option. The amount is not in dispute. Defendants' defense is that the granting of the option was in satisfaction of all plaintiff's grievances, past and future, the defendants thus stating their position in their brief:

"The parties' promises were mutually dependent and there can be no consideration for the agreement of the defendant to hold its offer to sell open until plaintiff's employment terminated, except the plaintiff's agreement that he would accept all matters of charges, costs, expense and accounting procedures in general as of that date, and his further promise that he would not protest in the future. The plaintiff, having breached this contract by repudiating his promise not to sue, has given defendants ground to rescind the option contract. * * *"

The memorandum containing the option set out no such conditions. It recognized plaintiff's right to acquire the described property which he was helping to pay for by rental payments. The defendants have not established that the option was given upon the conditions they now assert. The conclusion of the trial court that the option was valid and that plaintiff was entitled to recover for the damages he suffered by reason of defendants' breach thereof is supported by substantial evidence and is not clearly erroneous.

Finally, the defendants urge that the court erred in admitting certain evidence over their detailed objection. Defendants' principal complaint is with reference to the testimony of witness Walker, a certified public accountant, and summary exhibits prepared by Walker. Subject to objection, including hearsay, Walker was permitted to detail what plaintiff had told him relative to plaintiff's interpretation of the contract, as a foundation for permitting Walker to testify as to adjustments required in defendants' records to reflect plaintiff's theory of the case. As to the hearsay objection the court stated:

"Now, if the question now asked were propounded in an effort to get before the court the statements of Mr. Dingman to this witness as evidence of the verity and validity of those statements, of course the objection on the ground of hearsay would be true and would at once be sustained, but I conceive that the question is not asked at all for that purpose, and I shall not be disposed to regard this testimony as having any probative significance whatever upon the circumstances and validity of the understanding and agreements, if any, which Mr. Dingman may have disclosed to this witness.

"However, as an ingredient entering into the preparation of Exhibit 29, and as I must thus far assume as a reflection of Mr. Dingman's intention respecting the agreement, I think I should receive the evidence insofar only as it is foundational to Exhibit 29, and not otherwise * * *."

Summary statements were prepared by Walker showing adjustment of defendants' accounting he considered required, upon the basis of information given Walker by plaintiff. The court thus states its basis for receiving these summaries:

"The court also received over objection, but with the reservation of its probative significance certain evidence of a witness in behalf of plaintiff, named Raymond H. Walker, and certain accounting studies prepared by him. In the reception of that material the court reserved the determination of its significance and pointed out that it was not so much evidence in the conventional sense as technical argument by an accountant, not vitally objectionable in an action tried without a jury. It persists in that appraisal and has so regarded much of Walker's evidence."

It is doubtful whether there was any error in admitting the summary exhibits. See Hoyer v. United States, 8 Cir., 223 F.2d 134, 138; Rose v. Kahler, 151 Neb. 532, 38 N.W.2d 391, 393. In Builders Steel Co. v. Commissioner, 8 Cir., 179 F.2d 377, at page 379, this court stated:

"In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. An appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made. * *"

The foregoing rule was quoted and applied in Wisconsin Hydro Electric Company v. Equitable Fire & Marine Insurance Co., 8 Cir., 233 F.2d 313, Nebraska follows this rule. Rose v. Kahler, supra.

No practical purpose would be served in considering in detail the many errors defendants urge in connection with the reception of evidence. We have examined all of the objections urged. The defendants have failed to demonstrate that they have been prejudiced by any ruling of the trial court pertaining to the admission of evidence.

The judgment appealed from is affirmed.