886 F.2d 644
 15 Fed.R.Serv.3d 272
 Paul BECHTEL; Wanda Elaine Greene, Co-Executors of Estate
of Edward G. Greene, Deceased, Appellants,
v.
Janus R. ROBINSON, d/b/a Kirby & Holloway Family Restaurant
James Gray, d/b/a Kirby & Holloway Family Restaurant.
 No. 89-3120.
 United States Court of Appeals,
Third Circuit.
 Argued July 11, 1989.
Decided Oct. 3, 1989.
 
 Bayard J. Snyder (argued), Phillips & Snyder, P.A., Wilmington, Del., for appellants.
 Craig A. Karsnitz (argued), Young, Conaway, Stargatt and Taylor, Georgetown, Del., for Robinson, Gray, d/b/a Kirby & Holloway Family Restaurant.
 Before HIGGINBOTHAM, BECKER and NYGAARD, Circuit Judges.
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 This is an appeal in a diversity action from an order of the district court granting defendant's motion for summary judgment and denying plaintiffs' motion to file a second amended complaint. Because we find that the district court erred in not applying equitable estoppel against the statute of limitations defense, we will reverse the court's grant of summary judgment to the defendant. We will also reverse the court's denial of leave for plaintiffs to amend their complaint, and will remand this case for further proceedings consistent with this opinion.
 
 I.
 
 2
 The following facts are based on the district court's findings and are undisputed. On March 9, 1986, Edward G. Greene ("Greene"), while dining at the Kirby & Holloway Family Restaurant (the "Restaurant") in Dover, Delaware, sustained back injuries when the chair he was sitting in collapsed. At the time of the incident, James E. Gray ("Gray") was working in the Restaurant, and recalled helping Greene after his fall. On October 15, 1986, Michael P. Creedon ("Creedon"), an attorney in Philadelphia, Pennsylvania, who was retained by Greene, wrote the Restaurant requesting that its insurance carrier contact him about Greene's accident. Creedon's letter did not mention the commencement of any lawsuit, and although there is no direct evidence that anyone at the Restaurant received the letter, it was never returned by the post office. On November 19, 1986, Greene died of causes unrelated to the accident at the Restaurant.
 
 
 3
 In January 1988, Greene's case was referred to Bayard J. Snyder ("Snyder"), an attorney in Wilmington, Delaware, who began an investigation on behalf of the plaintiffs Paul Bechtel and Wanda E. Greene, co-executors of Greene's estate, to determine the proper party upon which to bring a tort action for the injuries Greene suffered in the Restaurant.[1] This investigation included a search of public records and available directories. From the Prothonotary's office in Kent County, Delaware, Snyder learned that the Restaurant was listed as being owned in sole proprietorship by Janus R. Robinson ("Robinson"). Moreover, an employee of Snyder's visited the Restaurant to determine actual ownership, but did not see any references to who owned the business except that of Kirby & Holloway, the Restaurant's trade name.
 
 
 4
 The plaintiffs filed a complaint in federal district court in Delaware[2] on February 17, 1988, naming as the defendant "Janus R. Robinson, d/b/a Kirby & Holloway Family Restaurant." On February 23, 1988, when the plaintiffs attempted service on Robinson at the restaurant, they were informed by an unidentified employee that Gray, rather than Robinson, was the owner of the Restaurant. Unbeknown to the plaintiffs at that time, Gray had purchased the Restaurant from Robinson on September 4, 1984 through a corporation called Creative Dining, Inc.
 
 
 5
 Upon receiving information that Gray was the owner of the restaurant, plaintiffs filed an amended complaint as of right on March 14, 1988, after the statute of limitations period had expired,[3] adding as a defendant "James Gray, d/b/a Kirby & Holloway Family Restaurant." Gray was personally served on March 18, 1988. When Gray answered the complaint on May 2, 1988, the plaintiffs learned for the first time that Creative Dining, Inc., was the actual owner of the Restaurant, and that Gray was the principal stockholder of that corporation.
 
 
 6
 Although Gray had not registered Creative Dining, Inc., as the new owner of the Restaurant prior to the filing of this suit, he did register "Creative Dining, d/b/a Kirby & Holloway Family Restaurant" in the Prothonotary's office on May 2, 1988. Before that date, the only public record that accurately reflected ownership was the state license of the Restaurant. That document was posted in Gray's office in the basement of the Restaurant, an area not open to the public.
 
 
 7
 In his answer to the plaintiff's complaint, Gray had raised the statute of limitations as an affirmative defense, and on July 7, 1988, he moved for summary judgment on that ground. On August 10, 1988, plaintiffs moved to file a second amended complaint correcting Robinson's name[4] and adding "Creative Dining, Inc., d/b/a Kirby & Holloway Family Restaurant" as a defendant. The district court, after determining that the plaintiffs had failed to meet the requirements under Fed.R.Civ.P. 15(c) for relating their amended complaint back to the time of the filing of the original action, and that Gray's failure to register his company as the owner of the Restaurant and to post its license publicly did not provide plaintiffs with any form of equitable relief from the statute of limitations defense, granted Gray's motion for summary judgment and denied plaintiffs' motion to file a second amended complaint. Judgment was entered on December 15, 1988 123 F.R.D. 484, and this appeal followed.
 
 II.
 A.
 
 8
 As an initial matter, we must determine what is our appropriate scope of review in this case. On this summary-judgment record, we view the facts as they are set forth on the affidavits, in the light most favorable to the non-moving party, in order to determine whether there are material issues of disputed fact. In that determination, our review is plenary. Erie v. Telecommunications, Inc. v. City of Erie, 853 F.2d 1084, 1093 (3d Cir.1988). We also exercise plenary review over the district court's statutory construction, see Chrysler Credit Corp. v. First Nat'l Bank & Trust Co., 746 F.2d 200, 202 (3d Cir.1984), and interpretation of legal precepts. Dent v. Cunningham, 786 F.2d 173, 175 (3d Cir.1986).
 
 
 9
 Moreover, when a trial court makes an equitable assessment after the operative facts are established, we review that assessment for abuse of discretion. See Callowhill v. Allen-Sherman-Hoff Co., Inc., 832 F.2d 269, 271 n. 4 (3d Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1228, 99 L.Ed.2d 428 (1988); E.E.O.C. v. Great Atlantic & Pacific Tea Co., 735 F.2d 69, 81 (3d Cir.), cert. dismissed, 469 U.S. 925, 105 S.Ct. 307, 83 L.Ed.2d 241 (1984). In that regard, we must decide whether the district court "located 'a just result' in light of the circumstances peculiar to the case...." Albemarle Paper Co. v. Moody, 422 U.S. 405, 424, 95 S.Ct. 2362, 2362, 45 L.Ed.2d 280 (1975). Finally, we review a trial court's denial of leave to amend a complaint for abuse of discretion. Kiser v. General Electric Corp., 831 F.2d 423, 426 (3d Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1078, 99 L.Ed.2d 238 (1988).
 
 B.
 
 10
 We first address the appellants' contention that the district court should have applied equitable estoppel to bar Gray from asserting the statute of limitations as a defense since his lack of compliance with Delaware law had caused them to sue the wrong party. Specifically, the appellants argue that Gray violated Del.Code Ann. tit. 6, Sec. 3101 (1975) ("Sec. 3101"),[5] which requires businesses operating under fictitious trade names to register their actual owner's name at the Prothonotary's office, and Del.Code Ann. tit. 30, Sec. 2109 (1985) ("Sec. 2109"),[6] which requires a business to post its license in a conspicuous manner in either its principal office or place of business.
 
 
 11
 With respect to appellants' contention that he violated Sec. 3101, Gray rejoins that he was not required to disclose that Creative Dining, Inc., was the owner of the Restaurant on grounds that Del.Code Ann. tit. 6, Sec. 3107 (1975) ("Sec. 3107")[7] expressly exempts legally incorporated companies from Sec. 3101's application. Nevertheless, the appellants assert that the purpose behind Sec. 3101 "is to allow the public ease and consistency in discovering the names of people transacting business in particular counties." Brief for Appellants at 24. Therefore, to avoid vitiating Sec. 3101's purpose, the appellants claim that Sec. 3107 should be read as only exempting corporations doing business under their corporate names, and not corporations doing business under fictitious trade names. Id.
 
 
 12
 We find the appellant's understanding of the import of Sec. 3101 to be supported by Delaware case law. As noted in 35 Virginia v. Tuttle, Civ. No. 1253, slip. op. (Del. Ch. June 26, 1987), aff'd, 536 A.2d 615 (Del.Supr.1987):
 
 
 13
 The purpose of a so called "common name statute" such as Sec. 3101 is "to protect the residents of the State [of Delaware] from the activities of unidentifiable associations engaged in business under assumed or common names." Silliman v. Dupont, 302 A.2d 327, 333 (Del.Super.1972), aff'd sub nom., F.I. Dupont, Glore Forgan & Co v. Silliman, 310 A.2d 128 (Del.Supr.1973).
 
 
 14
 Id. at 4.
 
 
 15
 Moreover, we find that the principles of statutory construction under Delaware law corroborate the appellants' reading of Sec. 3107. As stated by the Delaware Supreme Court:
 
 
 16
 The object of statutory construction is to give a sensible and practical meaning to the statute as a whole in order that it may be applied in future cases without difficulty, ... and if a literal interpretation leaves a result inconsistent with the general statutory intention, such interpretation must give way to the general intent. This is particularly true where such literal interpretation would lead to unjust and mischievous consequences.
 
 
 17
 Nationwide Mutual Ins. Co. v. Krongold, 318 A.2d 606, 609 (Del.Supr.1974) (emphasis added).
 
 
 18
 The district court initially held that "[t]o read Sec. 3107 literally to provide an exemption from the Sec. 3101 filing requirements for all legally incorporated Delaware companies is contrary to the protective purpose of the statute." Bechtel v. Robinson, et al., 123 F.R.D. 484, 489 (D.Del.1988), reprinted in Appellant's App. at 55. However, the district court still had some reservations about its construction of the statute and thus concluded that "it is at best arguable that Gray was required to so register." Id.
 
 
 19
 We have no such reservations in finding that Gray was required to register Creative Dining, Inc., as the owner of the Restaurant. It is certainly clear that "unjust and mischievous consequences" would result if businesses using fictitious trade names could simply evade Sec. 3101's disclosure requirement through the process of incorporation. If that were true, the exception carved out under Sec. 3107 would swallow the rule prescribed in Sec. 3101, and would have a devastating impact on the protection the Delaware legislature sought to afford citizens against businesses operating under assumed names in Delaware. Without a doubt, the state legislature did not desire this result, and while the Delaware Supreme Court has yet to decide the issue, a lower court has suggested that corporations using trade names must comply with Sec. 3101. See Zaleski v. Mart Associates, slip op. at 3-5 (Del.Super. Sept. 14, 1988) (noting that defendants' use of the trade name "Mart Associates" was not done pursuant to the registration requirements of Sec. 3101). Accordingly, we hold that Gray violated Sec. 3101 by failing to register Creative Dining, Inc., as the actual owner of the Restaurant after purchasing the business from Robinson.[8]
 
 
 20
 We next address appellants' contention that Gray's posting of the Restaurant's license in a part of the Restaurant closed to the public was an infraction of Delaware law. The relevant statute provides:
 
 
 21
 (a) Every person holding any state license authorizing the conduct of any business, trade or vocation shall expose such license in a conspicuous manner in the principal office or place of business of such person.
 
 
 22
 Del.Code Ann. tit. 30, Sec. 2109(a). Gray contends that he complied with the statute by posting the license on the wall of the Restaurant's office. The appellants, however, take the position that the license was not posted in a "conspicuous manner" since the office was located in a private area of the Restaurant.
 
 
 23
 Admittedly, the district court did not specifically address whether Gray's posting of the license in an area closed to the public constituted a violation of Sec. 2109. However, we agree with the appellants that the purpose of the statute is clearly to require people to post their licenses in full view of the public. Some persons can comply with the statute by posting their business licenses in their principal offices, where we can assume that clients seeking their services ultimately visit those offices. However, other persons can not comply with the statute by displaying their licenses in their principal offices, where those offices are inaccessible to the public. Restaurant owners fall within the latter category. Therefore, we hold that Gray was obligated under Delaware law to post the Restaurant's license in a conspicuous area open to the public.
 
 
 24
 Having found that Gray violated Delaware law, we now address appellants' contention that Gray's violations warrant the use of equitable estoppel to bar Gray from pleading the statute of limitations as a defense in this action. On this point, the district court concluded that even if Gray had been required to register under Sec. 3101, the Delaware legislature had not provided a tolling of the statute of limitations as one of the enumerated penalties for violating the statute. Moreover, the court held that, although Gray had posted the Restaurant's license in an area closed to the public, thus preventing the appellants from discovering the true identity of the owners, it could not engraft an equitable exception onto the limitations period for that reason.[9]
 
 
 25
 We find that the district court was mistaken in its determination that no equitable remedy was available to the appellants. Under Delaware law, "[equitable] estoppel may arise when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment." Wilson v. American Ins. Co., 58 Del. (8 Storey) 394, 398, 209 A.2d 902, 903-04 (1965) (citations omitted). As a result, "the person whose conduct has brought the situation about [is] estopped from asserting his legal rights against the party so misled." Wolf v. Globe Liquor Co., 34 Del. Ch. 312, 316, 103 A.2d 774, 776 (1954) (citations omitted).
 
 
 26
 Stated another way by one of the leading commentators on this subject:
 
 
 27
 Equitable estoppel in the modern sense arises from the conduct of a party, using that word in its broadest meaning as including his spoken or written words, his positive acts, and his silence or negative omission to do anything. Its foundation is justice and good conscience. Its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of law, unless prevented by the estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel.
 
 
 28
 3 S. Symons, Pomeroy's Equity Jurisprudence Sec. 802 (5th ed. 1941) (footnote omitted) (emphasis in original); see also Timmons v. Campbell, 35 Del. Ch. 68, 75, 111 A.2d 220, 224 (1955) (quoting treatise).
 
 
 29
 Upon our review of the record in this case, we find that the overwhelming weight of the evidence supports the use of equitable estoppel to bar Gray from pleading the statute of limitations as a defense. It is undisputed that, at the time appellants' brought their suit, Gray had not registered Creative Dining, Inc., as the owner of the Restaurant, and that the only name on record in the Prothonotary's office was Robinson's. It is further undisputed that Gray did not post the Restaurant's license, the only public document disclosing the true owner of the business, in an area of the Restaurant that was open to the public. As a result, the appellants were misled by Gray into thinking that Robinson was the owner, and their reliance proved detrimental since they did not discover that they had sued the wrong party until after the statute of limitations had expired.
 
 
 30
 While we recognize that "[t]he statute of limitations is important to a defendant to protect it from the unfair surprise of a stale claim," Callowhill, 832 F.2d at 273 (citing Kreiger v. United States, 539 F.2d 317, 322 (3d Cir.1976)), in this case any surprise to Gray is not "unfair." It was through Gray's own conduct, by misleading the appellants as to the proper party to sue, that appellants were forced to bring a stale claim against him.[10] Therefore, we hold that Gray is equitably estopped from pleading the statute of limitations as a defense.
 
 
 31
 Although Gray argues that he did not intend, in contemplation of this or any other lawsuit, to conceal the fact that Creative Dining, Inc., owned the Restaurant, we again note that whether a party intentionally or unintentionally committed an act is irrelevant under the doctrine of equitable estoppel. See Wilson, 58 Del. (8 Storey) at 398, 209 A.2d at 903-04. Likewise, Gray's contention that he should not be equitably estopped from pleading the statute of limitations since the appellants were informed on February 23, 1988 by an unidentified employee that Gray, and not Robinson, was the owner of the Restaurant, is without merit. It is undisputed that Gray was never the owner of the Restaurant and thus any information appellants received about Gray's ownership was still misleading. Indeed, the appellants did not discover that Creative Dining, Inc., was the actual owner of the Restaurant until May 2, 1988 when Gray answered the complaint.
 
 
 32
 On this last point, we find this case to be factually distinguishable from Food Fair Stores Corporation v. Vari, 55 Del. (5 Storey) 280, 191 A.2d 257 (1963). In that personal injury action, the plaintiff was notified prior to the expiration of the limitations period that it had sued the wrong party, and, in contrast to the case at bar, the plaintiff was given the name of the proper party to sue. Nevertheless, the plaintiff did not seek to amend its complaint to add the proper party until after the statute of limitations had run. The Delaware Supreme Court held that the trial court erred in not granting summary judgment for the improperly named defendant since there were no mitigating factors to excuse the plaintiff's failure to bring the action against the proper defendant. 55 Del. (5 Storey) at 284, 191 A.2d at 259.
 
 
 33
 In conclusion, we hold that the overwhelming weight of the undisputed evidence in this case warrants the application of equitable estoppel as a matter of law, and thus there is no need to remand this case for the district court to further assess the equities involved. We recognize that in some cases, where a trial judge makes an equitable assessment, there may be operative facts that would support contradictory dispositions. However, under the unique facts of this case, we find that any equitable assessment by a trial judge that did not grant the appellants relief would be an abuse of discretion. Accordingly, we conclude that the district court erred in granting Gray's motion for summary judgment.
 
 C.
 
 34
 We now address the question of whether the district court erred in not permitting the appellants to file a second amended complaint. The appellants' primary objective in seeking leave from the district court to amend their complaint was to add Creative Dining, Inc., as a defendant. Under Fed.R.Civ.P. 15(c),[11] a court can grant an amendment adding a party as a defendant to a complaint provided that the amendment can "relate back" to the time of the original filing. In Schiavone v. Fortune, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), the Supreme Court articulated a four-prong test for determining whether a proposed amendment met the relation back requirement:
 
 
 35
 (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirement must have been fulfilled within the prescribed limitations period.
 
 
 36
 Id. at 29, 106 S.Ct. at 2384.
 
 
 37
 The district court held that since the appellants had not proffered sufficient evidence to create an issue of fact as to whether Gray had received notice of the institution of this action prior to the running of the statute of limitations,[12] they had not satisfied the last three prongs of the Schiavone test. As a result, the court denied the appellant's motion for leave to amend their complaint since it reasoned that lack of notice to Gray, as principal stockholder of Creative Dining, Inc., was effectively lack of notice to the corporation.
 
 
 38
 However, in light of our finding that the district erred in failing to apply equitable estoppel to bar Gray from pleading that he did not receive notice of this action prior to the running of the statute of limitations, Schiavone 's concern with not prejudicing added parties with the unfair surprise of stale claims is irrelevant in this case. Therefore, we hold that the district court erred in denying appellants' motion for leave to amend their complaint on the basis that the amendment did not meet Rule 15(c)'s requirements for relation back.
 
 
 39
 We now examine whether the appellants' filing of an amended complaint should have been permitted under Fed.R.Civ.P. 15(a), which provides that "leave [to amend] shall be freely given when justice so requires." We have noted that the courts "have shown a strong liberality ... in allowing amendments under Rule 15(a)." Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing, 663 F.2d 419, 425 (3d Cir.1981) (quoting 3 J. Moore, Moore's Federal Practice p 15.08(2) (2d ed. 1989)), cert. denied, 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982). In Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court identified a number of factors to be considered in deciding on a motion to amend under Rule 15(a):
 
 
 40
 In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be "freely given."
 
 
 41
 Id. at 182, 83 S.Ct. at 230; accord, Heyl & Patterson Int'l, 663 F.d at 425; Cornell & Co. v. Occupational Safety and Health Rev. Comm'n, 573 F.2d 820, 823 (3d Cir.1978).
 
 
 42
 This Court has interpreted these factors to emphasize that "prejudice to the non-moving party is the touchstone for the denial of the amendment." Cornell & Co., 573 F.2d at 823. But the non-moving party must do more than merely claim prejudice; "it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely." See Heyl & Patterson Int'l, 663 F.2d at 426 (citing Deakyne v. Comm'rs of Lewes, 416 F.2d 290, 300 (3d Cir.1969)).
 
 
 43
 In the case at bar, the district court refused to grant the appellants' motion to amend their complaint under Rule 15(a), holding that the "denial to the defendant of the defense of the statute of limitations constitutes prejudice to the defendant." Bechtel v. Robinson, et al., 123 F.R.D. at 487 (citations omitted), reprinted in Appellants' App. at 47. We find that the court erred in its holding since Gray should have been equitably estopped from pleading the statute of limitations as a defense. We further find that by granting the appellants' motion to amend the complaint, no other prejudice will result since neither Gray nor Creative Dining, Inc., will be deprived of the chance to present facts or evidence since this case is still in the initial stages of discovery.[13]
 
 
 44
 In the absence of undue or substantial prejudice, we must examine whether "denial [can] be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." Heyl & Patterson Int'l, 663 F.2d at 425 (citations omitted). Upon our review of the facts of this case, we find no evidence to support any of these grounds for denial. The appellants investigated who was the owner of the Restaurant before bringing suit against Robinson. Upon being told that Gray was the owner of the Restaurant and not Robinson, they amended their complaint to add Gray as a defendant and served him with process. Moreover, when they learned that Creative Dining, Inc., was the actual owner, they promptly moved for leave to amend their complaint to add Creative Dining, Inc., as a defendant.
 
 
 45
 We conclude that justice requires that the appellants be allowed freely to amend their complaint under the facts of this case. By allowing the appellants to amend their complaint to add Creative Dining, Inc., as a defendant in this action, we will simply allow them to correct an error made on account of Gray's misconduct and through no fault of their own. Moreover, since the parties were still engaged in initial discovery at the time this amendment was proposed, the amendment will not delay the bringing of this case to trial. Accordingly, we hold that the district court abused its discretion in not granting the appellants' motion to file a second amended complaint.
 
 III.
 
 46
 For the foregoing reasons, we will reverse the district court's order granting defendant's motion for summary judgment and denying plaintiffs' motion to file a second amended complaint, and will remand this case for further proceedings consistent with this opinion.
 
 
 47
 NYGAARD, Circuit Judge, dissenting.
 
 
 48
 I dissent because I do not agree that appellants should be permitted to rely upon equity to resurrect the cause of action which they lost through their own inaction. It is disingenuous of appellants to argue that Gray's actions or inaction prevented them from filing suit against the proper party until after the statute of limitations had run.[1]
 
 
 49
 I agree with the majority's statement of Delaware law on equitable estoppel. I disagree with the support they find from the facts for their conclusion that equitable estoppel should apply in this case; (1) that appellants did not discover that they had sued the wrong party until after the statute of limitations had expired, Majority at 650; (2) that Gray's conduct so misled the appellants that they were forced to sue after the limitations period expired, Majority at 650-651; and (3) that "any information appellants received about Gray's ownership was still misleading," Majority at 651.
 
 
 50
 First of all, the alleged misstatement informed appellants fifteen days before the limitations period expired that they had sued the wrong party. Second, armed with this new information, appellants could have sued Gray within the time permitted by the statute of limitations and thereby preserved their right to add Creative Dining, Inc. pursuant to Fed.R.Civ.P. 15(c).[2] It was appellants' tardy reaction to the information given them which foreclosed their cause of action, not Gray's failure to register his corporation's fictitious name or the information given to appellants by some employee of the restaurant.
 
 
 51
 Because appellants discovered they had sued the wrong party two weeks before the limitations period expired; and, because the information that Gray was the owner, if acted upon, would have preserved their claim, I do not think the elements of equitable estoppel have been established. To this extent, I think Food Fair Stores Corp. v. Vari, 55 Del. (5 Storey) 280, 191 A.2d 257 (1963) controls our case. Although Food Fair is factually different, the differences do not warrant a contrary result because, in each case, had appellants sued the party they were told to sue within the limitations period, their claims would not have been barred. The difficulty which appellants suffer is not the result of some misstatement of fact or violation of law, but rather of their own inaction. They tried to do in two weeks that which the law expects will be done in two years.
 
 
 52
 I conclude that appellants do not deserve equity and appellee should not be estopped from relying upon the statute of limitations to bar appellants' claim. Consequently, I would likewise conclude that the district court did not abuse its discretion by denying appellants' request to add Creative Dining, Inc.
 
 
 
 [1]
 There is no record of what occurred during the interim period between the sending of the letter by Creedon and the starting of the investigation by Snyder
 
 
 [2]
 The district court had subject matter jurisdiction based upon diversity of citizenship. See 28 U.S.C. Sec. 1332(a)
 
 
 [3]
 Delaware law imposes a two-year statute of limitations on actions arising out of personal injury. See Del.Code Ann. tit. 10, Sec. 8119 (1975)
 
 
 [4]
 At some point in time, after they had filed their first amended complaint, plaintiffs learned that the former owner of the restaurant was James R. Robinson and not Janus R. Robinson
 
 
 [5]
 That statute provides in relevant part:
 No person, firm or association shall engage in, prosecute or transact any business within the limits of this State, by using any trade name or title ... without ... first filing a certificate ... in the office of the Prothonotary of each county in which it is prosecuting or transacting such business, designating the trade name or title and Christian and surname of such person, or, in case of a firm or association, the Christian and surname of each and every member of the firm or association.
 Del.Code Ann. tit. 6, Sec. 3101 (1975).
 
 
 [6]
 That statute provides:
 (a) Every person holding any state license authorizing the conduct of any business, trade or vocation shall expose such license in a conspicuous manner in the principal office or place of business of such person.
 Del.Code Ann. tit. 30, Sec. 2109(a) (1985).
 
 
 [7]
 That statute in pertinent part provides:
 Nothing in Secs. 3101-3105 of this title shall affect or apply to joint stock companies, using a common name, ... nor to legally incorporated companies.
 Del.Code Ann. tit. 6, Sec. 3107 (1975).
 
 
 [8]
 We note that, as a technical matter, it was Creative Dining, Inc., that failed to register. However, since Gray was the principal shareholder and an executive of the corporation, he had an obligation to cause Creative Dining, Inc., to register
 
 
 [9]
 We note that contrary to Gray's contention, the issue of equitable estoppel was properly raised by the appellants below. Indeed, Gray concedes in his brief that
 [i]n response to defendant-appellee Gray's brief [in support of the motion for summary judgment], plaintiffs-appellants filed a brief which discussed at great length the fact that defendant-appellee Gray failed to timely file a certificate indicating that his corporation, Creative Dining, Inc., was doing business under the trade name "Kirby & Holloway Family Restaurant["]....
 Brief for Appellee at 20. Under the federal rules, as long as the issue is pled, a party does not have to state the exact theory of relief in order to obtain a remedy. A "pleading is a vehicle 'to facilitate a proper decision on the merits' and not 'a game of skill in which one misstep by counsel may be decisive.' " LaGorga v. Kroger Co., 407 F.2d 671, 673 (3d Cir.1969) (quoting United States v. Houghman, 364 U.S. 310, 317, 81 S.Ct. 13, 18, 5 L.Ed.2d 8 (1960)).
 
 
 [10]
 Nor did Gray identify any source other than the fictitious name registration or restaurant license, such as county or municipality records, where plaintiffs' counsel might have discovered that Creative Dining, Inc., was the owner of the Restaurant
 
 
 [11]
 Fed.R.Civ.P. 15(c) provides:
 Whenever the claim or defense asserted in the amended pleading arose out of the same conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied, and, within the period provided by law for commencing the action against him, the party to be brought in by the amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.
 
 
 [12]
 Although the appellants contend that there was sufficient evidence to support a finding that Gray had received notice of this lawsuit prior to the running of the statute of limitations, upon our review of the record, we find that Gray only had notice of Greene's injury. The district court correctly held that "notice of the institution of the action" under Rule 15(c) does not mean mere notice of the event giving rise to the cause of action. See Schiavone v. Fortune, 750 F.2d 15, 18 (3d Cir.1984), aff'd, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986)
 
 
 [13]
 We note that this is hardly a case where late filing will prejudice a party from producing witnesses to the accident. Gray himself was present in the Restaurant at the time of the accident, see supra p. 646
 
 
 [1]
 I find it unnecessary to decided whether or not defendant violated Delaware's Trade Name Registry Act because even if it did, plaintiffs discovered whom to sue in time to amend their complaint and give notice to Gray
 
 
 [2]
 Gray was the majority shareholder of Creative Dining, Inc., which was the party that should have been sued. Had appellants acted to amend their complaint to add Gray and served notice to him within the fifteen days they had before the limitations period expired, see, Dandrea v. Malsbary Mfg. Co., 839 F.2d 163, 167, n. 4 (3d Cir.1988), they could have amended their complaint after the limitations period expired to add Creative Dining, Inc., and, under Schiavone v. Fortune, 477 U.S. 21, 28-29, 106 S.Ct. 2379, 2383-84, 91 L.Ed.2d 18 (1986), the amendment would relate back to the filing of the complaint against Gray because notice to Gray, as principal shareholder, would be notice to Creative Dining. See, Itel Capital Corp. v. Cups Coal Co., Inc., 707 F.2d 1253, 1258 (11th Cir.1983). Thus, the information given to appellants, if acted upon within the limitations, would have enabled appellants to sue the correct party without having their claim barred by the statute of limitations